GUSSIE STANFORD V. THE STATE.

No. 22329. Delivered December 9, 1942.
Rehearing Denied January 27, 1943.

The opinion states the case.

_Percy Foreman,_ of Houston, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for keeping a bawdy house, punishment being a fine of $200.00 and twenty days in jail.

Officers testified that on January 10, 1942, they went to the Windham Hotel, which is on the second and third floors of a building on Fannin Street in the City of Houston, where they found appellant and a number of girls—whom it is not necessary here to name—and also a number of men, some of whom were soldiers, and some students. The officers stayed about two hours during which time several men came to the place. Appellant and the four girls were arrested and taken to the city jail. The evidence shows that the place in question bore the reputation of being a house of prostitution and had borne such reputation for fourteen years. The girls found there on the occasion mentioned bore the reputation of being common prostitutes. Some of them had been arrested at this place on prior occasions and placed in the Venereal Disease Clinic. One of the officers testified as follows: "* * * I know the defendant in this case, Gussie Stanford. Prior to the 10th of January, 1942, I have seen her some ten or fifteen times. I have seen her at the Windham Hotel, 514 1/2 Fannin Street. I saw her ten or fifteen times beginning about the first of October to the end of December, within that period. This was in 1941, yes, sir. I say three months, October, November and December, of 1941.

As to what conversations I had with her, I had various conversations with her concerning her girls. I mean by girls, prostitutes in her establishment. The girls who were prostitutes that I have seen at the Windham Hotel during the three months period prior to January 10th, 1942, were Jackie Smith, or Jackie Moore. I have seen some seven or eight, I don't recall their names at the time. As to what I did on the occasions I went to the Windham Hotel, some times we did nothing but converse with Gussie Stanford. We talked about various things; usually we were there to take girls to the Clinic. As to what clinic, we took them to the Venereal Disease Clinic in this building. As to how many times we went to the hotel to take girls to the clinic during the three months period mentioned, we went once a week or ten times during that period. I stated that we took these girls to the Venereal Disease Clinic. * ** I filed some vagrancy cases out of the Windham Hotel, yes, sir. As to how many charges of vagrancy I filed during the three months period I was on the vice squad on occupants or people at the Windham Hotel, I say thirty or forty, at least on various occupants."

The testimony of officer Garrett will appear from a discusstion of bill of exception number four. The testimony of some of the men found at the place shows that they went there to have sexual relations with girls to be found there. On the same night appellant was arrested she made a written confession, the material parts of which are as follows: "* * * My name is Gussie Stanford, I am 48 years of age. I reside at 514 1/2 Fannin Street, Room No. 8, B-30420, Windham Hotel. I am the owner of the Windham Hotel and I have operated this hotel for the past twenty years. My husband, G. H. Stanford and I rent the upper part of the building used as the hotel from the Second National Bank. The building is owned by a Jerry Mitchell, his whereabouts are unknown to me. Tonight about 9:50 P. M. the police officers came to the hotel where they picked up Faye Evans, Odessa Lamkin, Gayle Hudson and Doris Douglas. These girls have been staying at the hotel. I charge them $11.50 per week rent. Odessa Lamkin has been staying with me off and on for the past two years, and has been hustling during that time. Gayle Hudson has only been with me for about a week, she previously stayed with Margaret Hines, Gale has been hustling since she has been with me, Doris Douglas has been with me about two weeks and she has hustled also during that time. * * * Odessa Lamkin,

Gale Hudson have been going to the Clinic for their treatments since the Clinic opened. These girls have been arrested by the police before and should have their records at the police station now. I do not know anything about their condition and have not discussed it with them. The officers also picked up Amanda Ramsey, the negro maid who has been employed by me for the past five years. She works at night, cleaning the rooms and general house work. She does not hustle at the hotel. The girls usually charge five dollars per date but I only rent the rooms to them when they spend the night. That is, I charge the man that is with them $2.00 for the rent of the room."

Bill of exception number one brings forward a complaint of irregularities in the search warrant, based on a claimed variance between the description of the property to be searched as contained in the affidavit for the warrant and in the warrant itself. We deem a discussion of the point raised not called for. The record shows that when the officers went to appellant's hotel one of them told her they had a warrant to search the place, whereupon she told him, "It was not necessary, to go any place in the hotel I wanted to go." Appellant did not claim upon the trial that the search was made without her consent. Her confession was put in evidence by the State, in which she very openly and candidly stated the facts existing as to what went on at her place. This court has frequently held that when a party was advised that officers had a warrant to search the premises the mere statement of the party that it was all right to go ahead, was not regarded as a waiver of the right to question the regularity of the warrant nor of consent to the search. See Lee v. State, 126 Tex. Cr. R. 18, 70 S. W. (2d) 185; Burke v. State, 135 Tex. Cr. R. 296, 120 S. W. (2d) 95, and authorities therein cited. On the other hand where the party tells the officer that a warrant to search is unnecessary, and no issue is made on the question, consent is shown. See Hall v. State, 105 Tex. Cr. R. 365, 288 S. W. 202; McPhail v. State, 114 Tex. Cr. R. 635, 26 S. W. (2d) 218; Hogland v. State, 124 Tex. Cr. R. 344, 62 S. W. (2d) 137. The question turns on the point as to whether the party really gives consent for the search, or merely acquiesces in the officer pursuing his legal rights under a valid warrant.

Bill of exception number two reflects that some of the officers went into the kitchen of said hotel and found in an ice box 80 bottles of cold beer. Appellant objected to this evidence going to the jury on the same ground as indicated in the dis-

cussion of bill number one, and on the further ground that there was no provision in the law for the issuance of a search warrant to search for prostitutes. The bill is qualified to show that appellant gave her consent to the search, and the bill is disposed of on the same grounds as bill number one.

Captain Morris of the police department testified that prior to the raid which resulted in this prosecution he had gone to appellant's hotel and told her they were having complaints from the Government about prostitution and that the Government was insisting that something be done about it. Objection was interposed to this testimony on the ground that what the Government was doing in the premises was hearsay. It will be observed that the statements as to what the Government was doing were not independent statements, but were a part of the conversation with appellant herself advising her of the Government's attitude in the matter.

In bill of exception number four appellant complains because officer Garrett testified that about two months prior to January 10, 1942, the date laid in the complaint, he arrested some girls at appellant's hotel and placed them in the Veneral Disease Clinic. The objection was that said testimony "was inflammatory and not shown to have any connection with this defendant." The court explains that no objections were made until after the witness testified, and that no motion was made to have the evidence withdrawn. That qualification disposes of the bill. However, we observe that the witness testified upon the point as follows: "* * * As to the number of times I have seen her (appellant) from October 10th, to December 10th, when I was assigned to Chief Eubank's office, I saw her five, six or seven times. I saw her at the Windham Hotel, at 514½ Fannin Street. As to what conversation, if any, I had with defendant when I saw her at the Windham Hotel, I talked to her at different times. During the two months I was on the vice-squad I talked to the defendant some five, six or seven times, I don't recall. I arrested some one the first time I went there. As to whether they were male or female, they were females. As to what was done with them, they were placed in the Venereal Disease Clinic. I will say that we took females out of that establishment four or five times. We did not take any determined amount each time, from two to a half dozen or so. As to what we did with all whom we took from there, well,

some time we placed them in jail, and some time in the Venereal Disease Clinic."

Counsel for appellant insists that the words "hustle" or "hustled" as used by appellant in her confession have not been judicially determined to mean engaging in prostitution, and that such is not their ordinary meaning, and, therefore, that the evidence is insufficient to support the conviction. In view of the evidence adverted to as well as much other to the same effect, it would be contrary to common sense to hold as counsel urges.

The judgment is affirmed.

## ON MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant has filed a motion for rehearing in which she contends that this court, in its original disposition of this case, erred in the following respect: First, in failing to sustain her contention that the search of her premises was illegal and in holding that the search was made with her consent; second, in holding that the evidence obtained in conversations with the defendant about other and different offenses than that laid in the complaint was inadmissible; third, that the words "dates" and "hustling" supply the quantum of proof required in a prosecution for keeping a bawdy house without any proof that the terms referred to related to illicit sexual intercourse.

We have again reviewed the record in the light of the appellant's motion but remain of the opinion that the case was properly disposed of on the original submission. These matters are fully discussed in the original opinion. The language of appellant employed in her conversations must be construed in the light of the subject under discussion at the time.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.