MANN v. CITY OF HEBER SPRINGS.

5141                                    395 S. W. 2d 557

Opinion delivered November 15, 1965.

*C. E. Blackburn*, for appellant.

*Bruce Bennett*, Atty. General, By: *Clyde Calliotte*, Asst. Atty. General, for appellee.

FRANK HOLT, Associate Justice. Appellant was charged by information with violating the liquor laws. The jury acquitted the appellant of the charge of possessing liquor for sale in a dry county (second offense) in violation of Ark. Stat. Ann. § 48-811.1 (Repl. 1964). He was found guilty of possessing more than one gallon of

intoxicating liquor in a dry county in violation of Ark. Stat. Ann. § 48-918. The court fixed appellant's punishment at a fine of $200.00, plus costs. For reversal of the judgment upon this verdict the appellant contends that the "court erred in failing to suppress the evidence obtained in the search and seizure either under an admittedly void search warrant, or the search of an automobile without a warrant." This motion to suppress was seasonably made.

The local police secured a search warrant to search appellant's combination residence and business for contraband liquor. The appellant was present when the officers arrived at his premises. The search warrant was exhibited to him and an unsuccessful search was made. It is admitted that the search warrant was invalidly issued as being in conflict with Ark. Stat. Ann. § 22-753 (Repl. 1962). Immediately following this fruitless search of his premises, the appellant gave the officers the keys to his car in compliance with their request. The car was parked in the street in front of his premises. Appellant accompanied the officers to his parked car where he assisted in opening the trunk compartment. There a case containing 48 half-pints of illegal liquor was discovered.

It is ably urged by the state that appellant's action in surrendering the keys and participating in the opening of the trunk was a consent to the search and thus constituted a waiver of any constitutional requirements of a search warrant. In support of this contention we are cited to numerous cases including our recent decision in *Williams* v. *State*, 237 Ark. 569, 375 S. W. 2d 375. In this case the information that stolen property was stored in a trailer was volunteered by the accused following which the exact location of the trailer was "pointed out" to the officers and assistance rendered in removing the stolen articles. We cannot agree that this case or others cited are controlling under the facts in the case at bar. In our view there was no knowledgeable consent to the search of appellant's parked automobile at his premises. This exploration was merely a continuation of and con-

temporaneous with a search made under an admittedly invalid warrant. This invalidity was unknown to appellant at the time of the search. In 79 C. J. S. Searches and Seizures § 62 (b) p. 820-21 it is said: "* * * Voluntary consent requires sufficient intelligence to appreciate the act as well as the consequence of the act agreed to. Since the consititutional guaranty is not dependent on any affirmative act of the citizen the courts do not place the citizen in the position of either contesting an officer's authority by force or waiving his constitutional rights, but instead they hold that a peaceful submission to a search or seizure is not a consent or an invitation, thereto, but is merely a demonstration of regard for the supremacy of the law."

The state further contends that the search of appellant's automobile was reasonable and, therefore, not in violation of constitutional restrictions. It is true that not all searches and seizures without a warrant are prohibited. Only those searches and seizures which are unreasonable are prohibited by the Fourth Amendment to the United States Constitution and Art. 2, § 15, Arkansas Constitution. We recognize the rule that an automobile may be searched without a warrant where there is reasonable or probable cause for the belief of the officers that contents of the automobile offend against the law. *Burke* v. *State*, 235 Ark. 882, 362 S. W. 2d 695. There we said that the total circumstances "all add up to probable cause for the search." These circumstances consisted of the reputation of the defendant as a bootlegger, his vehicle moving upon the road with the appearance of being heavily loaded, and a strong odor of "wildcat whiskey in the car" thus noticeable to the senses of the officers.

In the case at bar the only evidence in support of the existence of reasonable or probable cause to search appellant's automobile was appellant's reputation as being a bootlegger, a "tip" from a filling station operator to an officer earlier in the day that appellant had purchased gasoline for his car, and that appellant's parked car looked like it was "a little heavy loaded in

the back.'' It cannot be said that the appearance of the automobile was any different when the officers entered and searched appellant's premises than afterwards. It is undisputed that it was just as practical to secure a search warrant for the stationary vehicle as it was for appellant's house.

As was said in *United States* v. *Roberts,* 223 F. Supp. 49: ''* * * In the last analysis the question of the validity of a given search and seizure must be determined by reference to whether that particular search and seizure were reasonable or unreasonable, and that determination must be made on a case to case basis in the light of all the surrounding facts and circumstances.'' In the case at bar there was testimony that the car was searched by the officers because ''we didn't find any whiskey inside the building.'' It can fairly be said from the evidence that the failure to discover contraband whiskey in appellant's dwelling was the compelling basis for extending the exploratory search to appellant's parked automobile.

We hold that it was error to refuse appellant's motion to suppress the evidence. Reversed and remanded.

HARRIS, C. J. dissents.

JOHNSON, J., concurs.

JIM JOHNSON, Associate Justice, (concurring). I agree with the majority view. This concurrence is written for the purpose of emphasizing the fact that the protection of the constitutional rights of the least deserving of us is in reality the protection of the constitutional rights of all of us.

Bitter experience through the ages has taught men desirous of freedom that there could be no freedom without the recognition that free men must possess certain inherent and indefeasible rights, amongst which is the right to be secure in their persons, houses, papers and effects.

The authors of our Bill of Rights attested to this great truth when they wrote in the fourth amendment to the Constitution of the United States:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The framers of the constitutions of all of the states have incorporated similar language with the same import in the constitutions of their respective states. The provision in our constitution is Article 2, Sec. 15, and is almost identical to that contained in the Constitution of the United States.

For a number of years this court, while frowning upon unlawful searches and seizures, effectively encouraged the practice by permitting the introduction of evidence illegally obtained in cases being tried by persons who had sworn to uphold the very constitution which specifically prohibited the practice. (For example, see *Venable* v. *State,* 156 Ark. 564, 246 S. W. 860; and *Woolem* v. *State,* 179 Ark. 1119, 20 S. W. 2d 185.)

I was proud on May 25, 1959, when the majority of this court concluded in the case of *Clubb* v. *State,* 230 Ark. 688, 326 S. W. 2d 816, that the blindfolds of impartiality should be placed back on the Goddess of Justice. There we said:

"The right to be secure against unreasonable searches is guaranteed by Art. 2, Sec. 15 of our Constitution and also, in essentially the same language, by the 4th Amendment to the United States Constitution, yet our Court has followed a rule at variance with the Federal rule regarding the admissibility of evidence obtained by search without a warrant. After careful consideration we have concluded that we will re-examine our former decisions in this connection with a view to

changing our announced rule when the question is properly presented to us again.''

This conclusion was reached not in anticipation of nor to conform with some radical decision of the United States Supreme Court but because it was right, and just and proper and the only way to insure the protection of the constitutional rights of all the people to be secure in their persons, houses, papers and effects.

Following the *Clubb* decision but prior to a proper presentation of the question for our further determination, the United States Supreme Court in the case of *Mapp* v. *Ohio*, 367 U. S. 643, held that the fourth amendment to the Constitution of the United Staes through the agency of the due process clause of the fourteenth amendment governs the subject of searches and seizures in state proceedings.

Admittedly these two opinions have imposed the responsibility upon all law enforcement officers of this state to comply with the simple rules requisite of a lawful search and seizure. It should not be discouraging to our dedicated officials to require of them that they obey the very law they are sworn to uphold. Under our constitutional system the general public has the right to expect no less and demand no more.

In the case at bar, obviously appellant committed the crime with which he is charged. This would seem to place him in the category of those least deserving. This is not an unusual situation. It frequently becomes our unpopular duty and responsibility as an appellate court when error is demonstrated to reverse cases in which we are convinced beyond doubt of the guilt of the accused. If our function was merely that of an appellate jury we would quickly affirm these cases and who could say that the accused would not deserve the punishment. I am sure that this simple system prevails in some countries in the world but not in the United States. Ours is a government of laws and not of men. The least of us are clothed with every constitutional protection afforded the mighty. The precedent set today by the denial of those

rights to the guilty could well be the vehicles through which the innocent are convicted tomorrow.

For these reasons and those stated in the majority opinion, I concur.

CARLETON HARRIS, Chief Justice, (dissenting). I am unable to agree with the manner in which this case is disposed of by the majority, for it is extremely difficult for me to distinguish this case from *Williams* v. *State,* 237 Ark. 569, 375 S. W. 2d 375, mentioned by the majority in their opinion. There, one of the defendants was arrested, and the officers attempted to search his home; however, the defendant's wife would not permit the officers to enter until they had obtained a search warrant. Thereafter, the officers obtained a search warrant, but the warrant was clearly void, and of no effect, and this court so found. In the instant case, it is likewise conceded that the search warrant was void. With the search warrant in *Williams,* the officers proceeded to make a search of the house, but found nothing. Again, we have the same situation present in the instant case. Defendant's house was searched, but nothing was found. In *Williams,* this court then said:

"* * * so such search, though illegal, obtained no evidence; and thus the search of the Holeman house passes out of the case. If any evidence had been obtained in the Holeman house we would promptly hold that such was illegally obtained."

Likewise, I feel that the search warrant passes out of the picture in the present case, though the majority is holding that the search of appellant's automobile was based on the warrant, being "merely a continuation of and contemporaneous with a search made under an admittedly invalid warrant."

Again, referring back to *Williams,* the state's evidence disclosed that the defendants were arrested and charged with burglary and grand larceny. Some of the defendants told the officers that stolen property was stored in a trailer in Faulkner County. Two accom-

panied the officers, and pointed out the house trailer; one of the defendants unlocked the door to the trailer, and nearly all of the stolen property was found therein. On trial, appellants moved to suppress the evidence obtained from the search, contending that the search was unlawful, and in violation of their constitutional rights. This court said:

"* * * Were the appellant's constitutional protections against unreasonable search and seizure violated by the officers thus obtaining the articles from the 'trailer and detailing the evidence concerning same? Here, there was evidence, not only of waiver and consent, but also of active participation in the search; so there is no merit to the contention of the defendants that their rights against unreasonable search and seizure were violated insofar as concerns the articles in the trailer. In 79 C. J. S. p. 816 et seq., 'Searches and Seizures' § 62, there is a discussion of waiver and consent; and the holdings from the various jurisdictions—including the United States Supreme Court—are summarized:

"The constitutional immunity from unreasonable searches and seizures may be waived, as by a voluntary invitation or consent to a search or seizure. Thus individuals may waive their immunity to illegal searches of their persons, possessions, or dwelling houses, as well as to the illegal search of their premises, places of business, and searches and seizures of books, papers, or records. Hence, one who has thus consented to a search cannot thereafter complain of irregularities in the search warrant, or question its sufficiency or the manner of its issuance, since an invitation or consent to the search dispenses with the necessity of a search warrant altogether."

It is thus clearly established that this court, as well as the Federal courts, has said that consent to a search dispenses with the necessity of a search warrant.

Let it be remembered that the Constitution does not protect from all searches (without a warrant), but only those that can be considered unreasonable. There are

then only two simple questions in this case. First, did appellant consent to the search? Second, was the search reasonable, or was there a proper cause to make same? If either of these questions can be answered ''Yes''— then, in my view, this case should be affirmed. Actually, I think both questions can be answered in the affirmative. Here, Melvin Mann, the appellant, *unlocked the trunk of the car himself,* and there is no evidence that he objected, in any manner, to the search. As in *Williams,* the defendant not only consented, but even participated in- the search. Likewise, I am of the opinion that the evidence reflects the search to be reasonable, and based upon probable cause, *i.e.,* the officers had sufficient reason to believe that the car contained whiskey.

Let us first remember that, clearly, appellant had the reputation of being a bootlegger. This is even competent evidence in the trial of a defendant for engaging in the illicit trade of intoxicating liquors. Ark. Stat. Ann. § 48-940 (Repl. 1964) provides that the general reputation of a defendant for moonshining or bootlegging shall be admissible in evidence in prosecuting violations of the liquor control act. Chief Bolin testified that he had been informed that appellant was in possession of illegal whiskey, and also testified that he had information that Mann was bringing a load of whiskey into Cleburne County. It develops that Bolin received this information from other officers, and these officers, in turn, received information from a filling station operator, which information, the majority state, only amounted to the fact that Mann had filled his automobile with gasoline, and had gone out of town. I do not know the language used by the filling station operator in giving the officers the tip, but it is certainly definite that, whatever the language used, the officers gained the impression that Mann had left town to obtain a load of whiskey.[1] The information was explicit enough that they, shortly thereafter, reported to the chief that they had learned

[1] One thing is obvious—irrespective of how he expressed it to the officers, the information given to the police by the filling station operator was accurate, as evidenced by the fact that forty-eight half-pints of "Medley Brothers" whiskey was found in the trunk.

that appellant was bringing a load of whiskey into the county. The police chief testified that Mann's automobile seemed to be a little ''heavily loaded'' in the back, and this testimony was corroborated by Patrolman Beach, who testified, ''Well, it was sitting down a little bit low, like a little extra weight was in the trunk. * * *'' In *Burke* v. *State,* 235 Ark. 882, 362 S. W. 2d 695, cited by the majority, this court held that an automobile was properly searched for illegal whiskey because the officers had reasonable or probable cause to suspect that the car contained same. There, the defendant bore the reputation of a bootlegger; the vehicle had the appearance of being heavily loaded, and a strong odor of ''wild-cat'' whiskey seemed to come from the car. Thus, we have only the additional circumstance in the *Burke* case of the smell of whiskey, and I cannot agree that that circumstance made the *Burke* search legal, while the search in the instance case was illegal. This is a very fine distinction—too fine, I think.

The Heber Springs officers testified that the reason they did not search the automobile first was because they thought appellant had had sufficient time to take the whiskey into the house, and they apparently paid little attention to the car until after ascertaining that no whiskey was in the home.

I commend my brethren of the court for being zealous in protecting one's constitutional rights, but I feel that they have gone further, in suppressing this evidence, than the court has gone in prior cases. Under recent United States Supreme Court decisions, the task of the officer in obtaining competent evidence in divers types of prosecutions has been made much more difficult; restrictions have been placed upon him; evidence that was once held admissible is now held inadmissible, and I am fearful that many of our police officers are becoming discouraged.

I think that I, too, believe in protecting one's constitutional rights, but I am just as interested in protecting the rights of the general public. Here, we have a

defendant, who, beyond question, was violating the provisions of the Arkansas Alcoholic Control Act. Here was a man who, likewise, had previously violated the provisions of this act. Here was irrefutable evidence— (forty-eight half-pints of whiskey)—that appellant held no regard for our statutory requirements. Yet, with the suppression of this evidence, appellant goes "scot free" for, of course, the state is without evidence, if this testimony of the officers, and the forty-eight half-pints, cannot be introduced.

I would affirm the conviction.