# Danny Mack BYARS *v.* STATE of Arkansas

CR 75-145                                     533 S.W. 2d 175

Opinion delivered February 2, 1976
[Rehearing denied March 22, 1976.]

*John D. Thweatt* and *James M. Thweatt*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *Jackson Jones*, Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Danny Byars, appellant herein, was charged with possessing marijuana with intent to sell and deliver, and a jury returned a verdict of guilty, fixing punishment at six years confinement in the Department of Correction, and a $5,000 fine. From the judgment so entered, Byars brings this appeal.

Two issues are presented, the first being whether the affidavit, upon which a warrant was issued to search Byars' car, meets constitutional standards previously set out by United States Supreme Court decisions, and decisions of this court, and if such standards were not met, whether the search can be upheld on the ground that appellant consented thereto.

Because of information obtained, hereinafter discussed, Trooper W. D. Davidson of the Arkansas State Police, assign-

ed to Monroe County, accompanied by then Prosecuting Attorney Sam Weems and an area newspaperman, stopped Byars in his car at Main and Walnut Streets in Brinkley and took appellant into custody and drove him to the Brinkley jail where Byars was placed in a cell. Weems and the newspaperman remained at the scene of the arrest with the automobile. In the meantime, Captain James Neighbors of the State Police had arrived at the scene. While Byars was in the Brinkley jail, Davidson went to the Municipal Judge and requested a search warrant for appellant's car. The warrant was issued upon Davidson's affidavit, which reflects as follows:

> "That he has reason to believe that on the premises known as 'A green 1970 Ford LTD, Arkansas APA-299, driven by Danny M. Byars, W. M. from Cotton Plant, Arkansas' in the county of Monroe, State of Arkansas, there is now being concealed certain property, namely 'Marijuana, drugs and or narcotics or other paraphernalia' which are 'I have received certain information from a confidential source, of known reliability and who has furnished reliable information in the past, and that the suspect has a general reputation of transporting and selling marijuana, and drugs.'

> "And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: 'That the above marijuana, and drugs mentioned are being concealed in the above 1970 Ford LTD, bearing Arkansas license no. APA-299, driven by the above suspect, Danny M. Byars. Cotton Plant, Arkansas.' "

Davidson subsequently testified at a pretrial hearing that he gave the Municipal Judge no other information than that contained in the affidavit. After obtaining the warrant, Davidson returned to the police station, removed Byars from the jail and took him back to the scene, where appellant's car was still parked. The Brinkley Chief of Police, George Bethell, and a Brinkley policeman, Robert Gaddis, accompanied Davidson and Byars back to the scene. At this point, there is a slight conflict in the evidence. Bethell and Gaddis

testified positively that the warrant was read to appellant, Gaddis stating that Weems read the warrant to Byars. Davidson said that Byars stated, "You don't need the warrant, it is in the car." At any rate, the three officers all testified that Byars at this point stated, in effect, that he did not want to "cause a show and embarrass his family," and that what the officers were looking for was in the trunk of the car. Weems testified that his recollection was that appellant told Davidson, "What you are looking for is in the trunk," immediately after the arrest, and before the warrant was obtained. Thereafter, everyone returned to the police station, where the officers opened the trunk of the car and seized 38 sealed packages of green vegetable matter and 2 partially filled plastic bags containing green vegetable matter and assorted pills. Subsequently, at trial, a chemist from the State Department of Health testified that the vegetable matter tested positively as Cannabis Sativa L.

Apparently because of the unavailability of witnesses, and because appellant challenged both the validity of the search warrant and the voluntariness of an in-custody statement, the trial court held five separate pretrial hearings. During these hearings, the officers testified as heretofore mentioned, and at the conclusion of the hearings, the trial court held that the search warrant was valid, and, in addition, that appellant had given his permission for the car to be searched. The court did exclude from evidence the in-custody statement.

We think unquestionably, that under the decisions of the United States Supreme Court, and decisions of this court, the affidavit was insufficient to sustain the issuance of the search warrant. In *Aguilar* v. *Texas,* 378 U.S. 108, the court held that an affidavit based upon hearsay was insufficient to justify a search warrant, and this decision was expounded upon in the case of *Spinelli* v. *U.S.,* 393 U.S. 410. The court stated that:

"[W]e first consider the weight to be given the informer's tip when it is considered apart from the rest of the affidavit. It is clear that a Commissioner could not credit it without abdicating his constitutional function.

Though the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion. \*\*\* The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information — it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. [Citing cases]."

The court concluded that the informant's tip was not sufficient to provide the basis for a finding of probable cause, and added:

, "In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation *based merely on an individual's general reputation.*" [Our emphasis]

*Our own decisions are to the same effect. In Walton and Fuller* v. *State,* 245 Ark. 84, 431 S.W. 2d 462 (where the affidavit contained more information than the one before us), the law applicable to affidavits based on hearsay was summarized as follows:

"While an affidavit for a search warrant may be based upon personal observations of the affiant, it may also be based, in whole or in part, on hearsay information. When it is based upon hearsay, the magistrate must be informed of some of the underlying circumstances from which an informant concluded that the object of a proposed search was where he said it was. He must also be advised of some of the circumstances from which the officer concludes that the informer (whose identity need not be then disclosed) is credible or his in-

formation reliable. An affidavit, which does not contain any affirmative allegation that affiant speaks with personal knowledge of the matters contained therein and also fails to show that information given by an unidentified source was not merely his suspicion, belief or conclusion, *has been held not to show probable cause..*" [Our emphasis]

Likewise, in *Cockrell* v. *State,* 256 Ark. 19, 505 S.W. 2d 204, the requirements were further explained as follows:

"In *Bailey* v. *State,* 246 Ark. 362, 438 S.W. 2d 321 (1969), we said: 'The purported affidavit, which is the sole evidence of probable cause afforded the magistrate, is defective in that it states a mere conclusion.' There we also said that when an officer obtains information from an informer (hearsay) 'the warrant should not issue unless good cause is shown in the affidavit for crediting that hearsay.' Then in *Walton* v. *State,* 245 Ark. 84, 431 S.W. 2d 462 (1968), we said: 'In determining probable cause for the issuance of a search warrant, the magistrate must judge for himself the persuasiveness of the facts relied upon by a complaining officer and may not accept a complainant's conclusions without question.' And in *Durham* v. *State,* 251 Ark. 164, 471 S.W. 2d 527 (1971), we said: 'It is elementary that a valid search warrant cannot be issued except upon probable cause determined from facts and circumstances revealed to the issuing magistrate . . . . ' "

A recent opinion by the United States Court of Appeals (Fifth Circuit), handed down August 1, 1973, sets out succinctly the requirements for a valid search warrant and the reasons therefor. The court in *U.S.* v. *Chavez,* 482 F. 2d 1268, first referred to what had been said in *Aguilar* v. *Texas, supra,* to-wit:

"[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, *and* some of the underlying circumstances from which the officer concluded that the informant, whose

identity need not be disclosed, (citations omitted), was 'credible' or his information 'reliable.' 378 U.S. at 114, 84 S. Ct. at 1514.

The court then stated:

"This test is typically referred to as 'Aguilar's two-pronged test." [Citing cases] The first 'prong' requires that the affidavit disclose particular facts or circumstances which justify concluding that the informant is a reliable or trustworthy person. The second requires specific facts or circumstances tending to demonstrate that the informant, in the instance in question, had gathered his information in a reliable manner. The theory underlying these twin requirements is that they are dictated by the long-standing principle that determinations of probable cause are to be made by 'neutral and detached magistrate[s],' rather than by 'officer[s] engaged in the often competitive enterprise of ferreting out crime.' *Johnson* v. *United States,* 1948, 333 U.S. 10, 14, 68 S. Ct. 367, 369, 2 L. Ed. 436, 440. If a magistrate accepted an affidavit which did not meet the first prong of the test, the theory went, he would abandon to the officer his constitutional function of making an independent determination; for his determination would then be entirely dependent upon the officer's judgment of the informant's credibility. Similarly, if he accepted an affidavit not meeting the second prong, he would abandon his function to the informant; then his determination would depend entirely upon the informant's judgment about the facts of the case."

Let it be borne in mind that Trooper Davidson testified that, in acquiring the search warrant, he did not relate any facts to the Municipal Judge in addition to what was said in the affidavit. Indeed, to only orally mention additional facts would likewise have been insufficient, though prior to 1971, we had held that an affidavit could be supplemented by oral evidence before the judicial authority from whom the search warrant was being sought. However, in 1971, the General Assembly passed an act which is codified as Ark. Stat. Ann. § 43-205 (Supp. 1973), and which provides:

"A search warrant may be issued by any judicial officer of this State, *only upon affidavit sworn to before a judicial officer* which establishes the grounds for its issuance. [Our emphasis].

We commented upon this act in *Cockrell* v. *State, supra,* stating

"The cited act thus eliminates from consideration any oral testimony unless it is reduced to writing and accompanied by affidavit. We have said that for an instrument to be an affidavit it must be 'reduced to writing and sworn to or affirmed before some person legally authorized to administer an oath or affirmation.' *Thompson* v. *Self,* 197 Ark. 70, 122 S.W. 2d 182 (1938). It is therefore important that magistrates and law enforcement officers take heed of § 43-205 and govern their actions accordingly."

It is thus apparent that the affidavit made by Trooper Davidson (a form filled in by the officer) was insufficient to support the issuance of a valid warrant.

Why additional information was not included in the affidavit before being presented to the Municipal Judge is not shown, for according to subsequent testimony, there was ample evidence which could have been included in the affidavit, and which would have supported the issuance of a valid warrant. We refer to the testimony of Kenneth McKee, a supervisor in narcotics for the Criminal Investigation Division of the State Police. In the first pretrial hearing, McKee testified that he had concluded an investigation, based on information received and had located a supply of marijuana hidden in a shed in Brinkley. The officer stated that he had conducted a "field test" on the substance in the shed and had determined that it was marijuana, before the marijuana was ever picked up by appellant. He also testified that he staked out the shed, and on December 27, saw Byars place the contraband in the trunk of his car, and drive away. He described the car and gave the license number to Davidson who had already been alerted about the possibility of a narcotics arrest, and Davidson, as previously stated, stopped the

automobile. Now, these events *all occurred before the search warrant was obtained.* Needless to say, if these facts, or even a substantial part of them, had been included in the affidavit, such affidavit would have been more than adequate,[1] *i.e.,* the recitation of the facts, with the additional statement that such information was obtained from a police officer (instead of stating a "confidential source") would have answered the test. See *United States* v. *Ventresca,* 380 U.S. 102; *United States* v. *Spach,* 518 F. 2d 866, 869 & n.1 (7th Cir. 1975); *United States* v. *DeCesaro,* 502 F. 2d 604 (7th Cir. 1974); *United States* v. *Welebir,* 498 F. 2d 346 (4th Cir. 1974); and *United States* v. *Various Gambling Devices,* 478 F. 2d 1194 (5th Cir. 1973). Of course, the fact that later testimony before the Circuit Court established that there was ample evidence to obtain a search warrant does not change the insubstantiality of the affidavit, nor does the. fact that the marijuana was found in the car validate the search warrant. See *Walton and Fuller* v. *State, supra; Cockrell* v. *State, supra; Manning* v. *City of Heber Springs,* 239 Ark. 969, 395 S.W. 2d 557. .

This brings us to the question of whether Byars gave a valid consent that his car be searched. In this connection, appellant relies upon *Bumper* v. *North Carolina,* 391 U.S. 543, where the United States Supreme Court said:

"The issue thus presented is whether a search can be justified as lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant. We hold that there can be no consent under such circumstances.

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does

---

[1] It may be that Davidson was not advised of these facts.

not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all."

We think the key statement is, "This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority," *i.e.*, we do not take *Bumper* to mean that an accused can never be deemed to have consented to a search, if a search warrant had been obtained and the accused was aware of that fact. Rather, we consider that this question is determined by the particular facts present when the consent is purportedly given. In *Hoover* v. *Beto*, 467 F. 2d 516 (1972), the United States Court of Appeals (Fifth Circuit) held that whether consent to search has been given is a question of fact. There, the officer went to the home of Hoover, knocked, and Hoover answered the door. The officer advised that he had a warrant to search the house; thereupon, Hoover replied, "that the search warrant was unnecessary, for (him) to come on in his house and look wherever (he) pleased." The officer had the warrant in his hand when he knocked on the door, and Hoover asked to see it after the officer went inside. The state trial court upheld the search on the ground that Hoover had advised that it was not necessary to have a search warrant and invited the officer to search the residence, and the Texas Court of Criminal Appeals subsequently affirmed, finding that there was an invitation to search. Thereafter, Hoover applied to the Federal District Court for a writ of *habeas corpus*, which application was denied, and Hoover appealed to the Circuit Court of Appeals. A three-judge panel of that court reversed the district court, but on rehearing *en banc*, the court held that the consent was not involuntary because of the use of the warrant.

In doing so, the court stated:

"The Texas State rule of law prior to *Bumper* was not substantially different from the principles upon which *Bumper* is based. In *Stanford* v. *State*, 1942, 145 Tex. Cr. R. 306, 167 S.W. 2d 517, on which the Texas court relied to find consent, the Texas Court of Criminal Appeals stated:

'This court has frequently held that when a party was advised that officers had a warrant to search the premises the mere statement of the party that it was all right to go ahead was not regarded as a waiver of the right to question the regularity of the warrant nor of consent to the search * * * On the other hand, where the party tells the officer that a warrant to search is unnecessary, and no issue is made on the question, consent is shown. * * * The question turns on the point as to whether the party really gives consent for the search, or merely acquiesces in the officer pursuing his legal rights under a valid warrant.' Id. 167 S.W. 2d at 519. (Citations omitted.)

"In *Stanford,* after the officer told defendant that he had a warrant, defendant stated that it was not necessary to have a warrant and 'to go any place in the hotel (he) \ anted to go.' Id. at 519. The Court held that the defendant had consented to the search and that the consent operated as a waiver of the right to object to the validity of the warrant. That was the situation here, and it is apparent the circumstances differ from those in *Bumper.*"

It was then pointed out that in *Bumper,* the party in question was a sixty-six year-old widow of limited education, who was not a suspect at the time, nor an eventual defendant in the criminal proceedings, and while Hoover was a lawyer experienced in criminal law, this fact was not necessarily a controlling distinction, but only a circumstance.

The United States Supreme Court denied certiorari. 409 U.S. 1086 (December 18, 1972).

The same approach was taken by the Supreme Court of Tennessee in *Earls* v. *State,* 496 S.W. 2d 464. There, also, a search warrant which had been obtained was held to be invalid, but the court held that Earls validly consented to the search. The facts, pertinent to this discussion, are set out in the opinion as follows:

"Armed with the search warrant, Sheriff Russell and five other officers went to the home of the defendant.

The defendant was not under arrest. The Sheriff handed him a copy of the warrant and began reading the original to him. As the Sheriff was reading, the defendant threw his copy to the ground and said: 'You needn't to have brought a search warrant. You gentlemen are welcome to search anywhere on my premises you want to search and take anything you find.' Following this the officers searched the defendant's home and took from it a torn love letter to 'Marsha'; and in his truck they found a number of tools, the most important of which was a pair of wire cutters subsequently determined by the laboratories of the Federal Bureau of Investigation to be those that had been used to sever a barbed wire fence surrounding the pond where the body of the deceased was found."

The court then stated:

"Can a search be justified as lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant? The *Bumper* opinion holds, ' . . . that there can be no consent under such circumstances * * * (because) the situation is instinct with coercion — albeit colorably lawful coercion. Where there is coercion there cannot be consent.' The defendant relies on this language to support the proposition that consent can never be given under the situation involved in this case. The State argues that the *Bumper* opinion does not establish any such absolute prohibition. Rather, it contends that such a holding, if allowed to stand, 'would invalidate the well-established rule . . . that the voluntariness of a consent to search is a question of fact to be decided in light of the attendant circumstances by the trier of fact,' and relies on the following excerpt from the *Bumper* opinion in support of its contention:

'When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.'

"We are asked, therefore, to examine and interpret the *Bumper* opinion in order to determine its requirements. We do not believe that the *Bumper* opinion is a blanket prohibition that no consent can ever be given where an invalid warrant is involved. Such a holding ignores the realities of life and denies the long standing principle that the existence and voluntariness of a consent to search and seizure is a question of fact to be decided in the light of attendant circumstances. *White* v. *United States,* 444 F. 2d 724 (10th Cir. 1971). The creation of such a legal fiction is inherent with danger. \*\*\*

"We believe that the *Bumper* case stands for the proposition that it is possible to give valid consent to search even after the existence of the warrant is made known, but the State must show by clear and convincing evidence that the consent is not based upon the warrant and was not coerced by other factors. It is conceivable that a person could give a voluntary and uncoerced consent to search even though he had been informed that the officers had a search warrant, but the State would bear the burden of showing that the consent was sufficiently independent of the warrant to remove the taint of its coercive nature.

"Having decided that the *Bumper* case concerns itself with the quantum of proof brought forth by the prosecution, we must now determine the standard for meeting the burden of proof and the factors that must be considered in its evaluation. The sole indication given in the *Bumper* case is that the burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.

"In the *Bumper* case the court emphasized that the party to whom the warrant was presented was 'a 66-year old Negro widow, in a house located in a rural area at the end of an isolated mile-long dirt road.' Further, there were 'four white law enforcement officers — the county sheriff, two of his deputies, and a state investigator —'. The court seems to imply that age, intelligence, socio-economic class, and environment are

factors to be considered in determining whether consent was given.''

The holding in *Hoover* v. *Beto, supra,* was then discussed, and the court continued:

"Hence, we are left with no explicit statement as to what is necessary to meet the burden. Instead we must simply make our decision on the basis of the circumstances presented in the case law. Having thoroughly reviewed the facts, we are of the opinion that Earls voluntarily consented to the search, and the fruits of the search were admissible into evidence against him. While Earls was not a lawyer with extensive criminal experience, he did nevertheless have some college education. The record further reveals that he engaged in investment trading of stocks and bonds. And, as was noted above when the Sheriff handed him a copy of the warrant, the defendant threw it to the ground and stated, 'You needn't to have brought a search warrant. You gentlemen are welcome to search anywhere on my premises you want to search and take anything you find.' In all cases the question turns on whether the party really consents to the search or merely acquiesces to the warrant. In our opinion, the facts 'constitute clear and convincing evidence of voluntary consent to the search, irrespective of the validity of the warrant.' Earls voluntarily consented to and invited the search. That consent was neither coerced nor compelled by the search warrant. As the court stated in the *Hoover* case, supra: The argument that express declarations of invitation and consent, such as were present here, constitute nothing 'more than acquiescence to a claim of lawful authority' neither comports with reason and logic nor with human experience and common sense.''

Petition by Earls for Federal *habeas corpus* relief was denied by the district court on May 22, 1974, that court holding that it is the intent of the person giving the consent to search, and not the intention of those conducting the search, which controls in determining whether the consent was voluntarily given.

What are the facts in the case before us?

First, three officers all testified that Byars stated, in effect, that he did not want to "cause a show and embarrass his family"; that what the officers were looking for was in the trunk of the car. The prosecutor was of the opinion that this statement was made even before the warrant was obtained, but at any rate, the statement made by the appellant appears to have been spontaneous and voluntarily given. The record reflects that Byars, son of an Exxon distributor in Cotton Plant, graduated from high school and attended Henderson State University for two and one-half years, playing on the football team. It is thus apparent that appellant was not ignorant, or unlearned, and was apparently possessed of sufficient intelligence to make his own determination that the officers could search the automobile. His statement that he didn't desire to "embarrass" his family appears to be in accord with his background. Let another important fact be remembered, *viz.*, that there was never, in chambers or otherwise, any denial of the statements made, nor any contrary evidence presented.[2] We have concluded that Byars' consent to the search of the car was voluntarily given.[3]

It is also urged that there was insufficient evidence before the jury to sustain a conviction of possessing marijuana with the intent to sell and deliver. Ark. Stat. Ann. § 82-2617 (d) (Supp. 1973) provides:

> "Possession by any person of a quantity of any controlled substance listed in this subsection in excess of the quantity limit set out herein, shall create a rebuttable presumption that such person possesses such controlled substance with intent to deliver in violation of Section 1 (a) and (b) (this section) of this article. . . . "

The subsequent amount referred to in the subsection is one ounce of marijuana, and the evidence here reflects that

[2]In *Hock* v. *State,* 259 Ark. 67, 531 S.W. 2d 701 (1976), Hock vigorously denied that he had given his consent for a search.

[3]Of course, the fact that Byars was in custody does not invalidate consent. It is only a circumstance to be considered. *United States* v. *Watson,* — U.S. —, 96 S. Ct. 820 (1976); *United States* v. *Jones,* 475 F 2d 723 (5th Cir. 1973) *cert. denied,* 414 U.S. 841 (1974).

the officers recovered thirty-six pounds of marijuana from the car. Don Wise, a chemist with the Arkansas Department of Health and Drug Abuse Laboratory, testified that he ran a test on 10% of the confiscated vegetable matter (standard procedure), as earlier pointed out, and it tested positively as Cannabis Sativa L.

Appellant, in his brief, contends, however, that the evidence was insufficient for conviction, stating:

"Definitely, there is no testimony that anyone at any time saw the defendant raise the lid of the trunk, and no evidence that the defendant had knowledge that the substance was in the trunk of the car driven by him.

"The court will take judicial knowledge of the fact that the contents of the trunk of an automobile is not visible to anyone unless the lid to the trunk is raised.

"It is fundamental that unless the defendant had knowledge that the substance was in the car it could not be held that he had it in his possession."

Of course, the testimony of McKee in chambers, heretofore summarized, would have quickly answered this argument, but neither this officer, nor the city officers, testified before the jury. Nor did Davidson mention the statement of Byars relative to not desiring to embarrass his family, and that what the officers were looking for was in the trunk. Be that as it may, Davidson testified relative to stopping the car, and the finding of the marijuana, and Officer Neighbors testified relative to the chain of custody after the confiscation from the officers to the Department of Health and Drug Abuse Laboratory. While we have no drug cases on the particular argument made by appellant, other jurisdictions provide much authority on the question. In *Eason* v. *United States*, 281 F. 2d 818 (9th Cir.), where two defendants denied knowledge of the presence of marijuana found hidden in the car, the court held that a jury could properly infer from the presence of narcotics in the car that the defendants had knowledge of such presence. The argument that some stranger could have secreted the marijuana in the car, was rejected, the court noting that while this *could* have happened, its possibility was not "so patently reasonable as to warrant our ruling as a matter of law that an inference of knowledge

was not available from the facts of the case." This approach has been affirmed subsequently many times. In *U.S.* v. *Dixon,* 460 F. 2d 309 (9th Cir.), *cert. denied,* 409 U.S. 864 (1972), that court decided a case quite similar to the instant litigation. Dixon attempted to drive his car across the Mexican border, but a search revealed thirty pounds of marijuana hidden in the trunk and under the rear seat. Dixon argued that the evidence was not sufficient to prove that he knew that marijuana was in the car. However, the court affirmed the conviction, stating:

> " [T]he simple act of driving a loaded car provides a substantial basis for a conclusion of knowledge. [Citation omitted.] The jury was not obliged to believe Dixon's story that, unknown to him, someone else loaded the car."

See also *People* v. *Chavez,* 511 P. 2d 883 (Col.) and *State* v. *Potts,* 464 P. 2d 742 (Wash.).

Here, it is undisputed that the appellant had control of the automobile in which the marijuana was hidden — he was its driver and sole occupant. The amount of the drugs recovered — plus its form, *i.e.,* individual "bricks" that would facilitate sale or delivery, in addition to what has already been pointed out, certainly was substantial evidence to support the verdict of the jury.

Finally, it is contended that the verdict of the jury was ambiguous and not corrected before adjournment. When the jury retired, the court gave the following form for verdict:

> "We, the jury, find the defendant, Danny Mac Byars guilty as charged in the information and fix his punishment at ———(not to exceed 10)——— years in the State Department of Correction or a fine of ————————————— or both imprisonment and fine." (not to exceed $15,000.00)

In returning the verdict, the jury had written in the first blank the figure "6" and the second blank "$5,000.00." Appellant points out that the verdict form uses the word "or" instead of "and." When this verdict, signed by the foreman, was read, the court immediately inquired if the jury meant both the 6 years confinement and the 15,000.00 fine, and the

foreman answered in the affirmative. The court further inquired of all members of the jury if this was the verdict, and all agreed. We find no error.

Affirmed.

FOGLEMAN, J., concurs.

GEORGE ROSE SMITH, BYRD and HOLT, JJ., dissent.

JOHN A. FOGLEMAN, Justice, concurring. I agree with the majority and with Mr. Justice Byrd that the search warrant was invalid. I agree with Mr. Justice Byrd that the state did not meet its burden of proving consent. I would add that the search was not permissible as incident to the arrest. See *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970). I still would hold that the search was not unreasonable.

In spite of the fact that the affidavit for the search warrant failed to properly establish probable cause for a search, there was certainly probable cause for Byars' arrest. By the same token, there was probable cause to search the automobile driven by him for contraband, marijuana. Ever since *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), it has been recognized that automobiles may be searched without a warrant in circumstances which would not justify the search of a house or office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize. The United States Supreme Court said this in *Carroll:*

> "The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported."

In *Chambers* the precepts of *Carroll* were applied. In speaking of *Carroll*, the *Chambers* court said:

The Court also noted that the search of an auto on

probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

"The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law."

Finding that there was probable cause for the search and seizure at issue before it, the Court affirmed the convictions.

In *Chambers* it was held that given probable cause for a search, an intense warrantless search of the automobile after it had been removed to the police station was not unreasonable. A reading of *Chambers* in the light of *Texas* v. *White*, 423 U.S. 67, 96 S. Ct. 304, 46 L. Ed. 2d 209 (1975), makes the search of an automobile reasonable if there is probable cause, and the fact that an automobile, rather than a house or an office is searched, furnishes exigent circumstances. In *White* consent was refused, and the automobile had been taken to the police station by a police officer. The search was not conducted until about 45 minutes after it had been brought to the station house, duri g which time the officers were questioning the arrested driv r of the automobile.

In this case the officers took Byars into custody, put him in jail, obtained an invalid warrant, then took Byars back to the automobile, and after he made the statements set out in full in the dissenting opinion, seized the automobile and returned both Byars and the automobile to the police station where the search was conducted. It seems to me that the seizure was justified under *Chambers* and that the search for contraband at the police station without a warrant can be justified.

Even where contraband is not involved, we have sustained warrantless searches of automobiles based on probable cause. See *Anderson* v. *State*, 256 Ark. 912, 511 S.W. 2d 151; *Roach* v. *State*, 255 Ark. 773, 503 S.W. 2d 467; *Cox* v. *State*, 254 Ark. 1, 491 S.W. 2d 802; *Moore* v. *State*, 244 Ark. 1197, 429

S.W. 2d 122.

I should note that *Steel* v. *State,* 248 Ark. 159, 450 S.W. 2d 545, was decided on the basis of validity of a search incident to an arrest, applying *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685, reh. den. 396 U.S. 869, 90 S. Ct. 36, 23 L. Ed. 2d 124 (1969). This was before the decision in *Chambers.* In a footnote to that opinion it was pointed out that nothing in *Chimel* purported to modify or affect the rationale of *Carroll. Steel* probably would have been decided differently after *Chambers,* or if the searches in *Steel* has been considered in the light of anything except a search incident to an arrest and a search with a warrant.

I would affirm the judgment.

CONLEY BYRD, Justice, dissenting. I agree with the majority the search warrant is invalid. I disagree with the majority opinion that the evidence here is sufficient to show that appellant Byars consented to the search of his automobile.

The facts in the case before us show that appellant Byars was first arrested on the streets in the city of Brinkley and then placed in jail. After the officers obtained a search warrant, they removed appellant from the jail and took him to his automobile where the search warrant was served. On cross-examination of Sergeant Davidson at pages 169-170 of the record, the following occurred:

"Q. Alright what statements did the defendant make there?

A. Only the request that uh I don't remember just what he did say but he indicated that he didn't want a show, that he wanted to handle it quietly. He said 'what you are looking for is in the car.' At this time and uh he want to embarrass his family and at this time we all loaded up, his car was driven to the police station by some officer. I don't know who drove the car.

Q. Let me ask you sir whether or not he was emphatic about not wanting to embarrass his family?

A. To me yes sir he was emphatic.

Q. That seemed to be a thing that was bearing on his mind?

A. It was a concern of his, yes.

Q. Would you say at that point that the matter of concern of his family of embarrassing his family, whatever the right term is, worrying them, embarrassing them, concerning them or whatever it may be was foremost in his mind?

A. I couldn't answer that. I don't know what was foremost in his mind.

Q. It was obviously toward the front of his mind?

A. Yes sir, it was in his mind.

Q. Because he was, you say, emphatic on that point?

A. Yes.

Q. Now do you remember his saying anything else?

A. No sir. He was not asked anything pertaining to the case. I don't recall him volunteering anything else."

Sergeant Davidson made a written return on the search warrant, stating as follows:

## "RETURN

I received the attached search warrant 12-27-72 and have executed it as follows: On 12-27-72 at 10:00 a.m. I searched the premises described in the warrant and I left a copy of the Warrant with Danny M. Byars together with a receipt for the items seized.

The following is an inventory of property taken pursuant to the warrant; 38 sealed packages of green

vegetable matter, 2 partially filled plastic bags containing a green vegetable matter, 1 small scales, 1 pipe (smoking), 1 fuse box containing 8 orange colored pills and 2 pills wrapped in aluminum foil, and 1 small vial.

This inventory was made in the presence of J. L. Neighbors and George Bethell.

I swear that this inventory is a true and detailed account of all the property taken by me on the warrant.

Signed by W. D. Davidson on 12-27-72."

To distinguish this case from our opinion in *Hock* v. *State*, 259 Ark. 67, 531 S.W. 2d 701 (1976), the majority relies upon *Hoover* v. *Beto*, 467 F. 2d 516 (5th Cir. 1972) and *Earls* v. *State*, 496 S.W. 2d 464 (Tenn. 1973). There is a substantial difference between those cases and this case. In both of those cases, the accused was at home and not under arrest when the search was made. Furthermore, both of those cases involved an invitation to search instead of an acquiescence to lawful authority.

*Hoover* v. *Beto, supra,* involved the conviction of an experienced Texas criminal lawyer and former mayor of the City of Pasadena, Texas, as an accomplice to the crime of robbery. When the officer knocked at Hoover's home and told him that he had a search warrant, Hoover told the officer, "that the search warrant was unnecessary, for [him] to come on in his house and look wherever [he] pleased." Hoover acknowledged on appeal that the words he spoke constituted an invitation to the police to enter and search but argued:

"The invitation which appellant extended to the searching officers to come into his house upon his being presented with that misrepresentation [the allegedly invalid search warrant] was induced by, and solely a product of, that misrepresentation.

"Therefore any consent evidenced by that invitation could not have wholly been a product of the appellant's free will."

The Fifth Circuit after recognizing the sufficiently clear and positive evidence test then held as follows:

". . . Our own view of the testimony is that when attorney Sam Hoover told Police Officer Hodges that his warrant was not necessary and to come on into his home and search wherever he wanted, this constituted clear and convincing evidence of voluntary consent to the search, irrespective of the validity of the warrant. Hoover voluntarily consented to and invited the search. That consent was neither coerced nor compelled by the search warrant. The argument that express declarations of invitations and consent, such as were present here, constitute nothing 'more than acquiescence to a claim of lawful authority' neither comports with reason and logic nor with human experience and common sense.

. . .

"The dissent filed herein is merely a lengthy restatement of the views of the panel in the original decision in this case. We are impelled, however, to make further elaboration of the majority opinion because of what we consider to be erroneous statements of law and fact in the dissent.

. . .

"As to the alternative question of Hoover having voluntarily consented to the search and, in fact, having invited it, the dissent insists that *Bumper* v. *State of North Carolina*, 391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968), to which we have already referred, is expressed in absolute terms and consent to search is legally impossible where an invalid search warrant is presented. Curiously, in making this assertion the dissent appears to abandon that part of the original panel decision which asserted that 'while it is possible to give valid consent to search even after the existence of the warrant is made known, the State must show by clear and convincing evidence that the consent is not based upon the warrant and was not coerced by any other factors' and

further stated, 'It is conceivable that a person could give a voluntary and uncoerced consent to search even though he had been informed that the officers had a search warrant. But the State would bear the burden of showing that the consent was given sufficiently independent of the warrant to remove the taint of its coercive nature.' 439 F. 2d at 920. In our opinion the panel's holding in this regard, rather than the present dissent, correctly states the law. Resolution of the question of consent and invitation to search under such circumstances is dependent upon the facts of each case. *Bumper* was decided on its facts which are substantially dissimilar to those facts of this case, as we have already pointed out. Yet the dissent argues that 'Nowhere does *Bumper* draw a distinction, as the majority in this case seemingly does, between an invitation and acquiescence.' The answer to this argument is plain — *Bumper* did not involve an invitation, such as occurred here."

Consequently, as can be seen in *Hoover* v. *Beto, supra,* relied upon by the majority, there was an "invitation" to search by a seasoned and experienced criminal lawyer.

The next opinion upon which the majority relies is *Earls* v. *State,* 496 S.W. 2d 464 (Tenn. 1973). There the defendant was not under arrest, and when the sheriff handed him a copy of the warrant and began reading the original, Earls threw his copy to the ground and stated: "You needn't to have brought a search warrant. You gentlemen are welcome to search anywhere on my premises you want to search and take anything you find." The Tennessee Supreme Court, after stating a preference for Justice Black's dissent in *Bumper* v. *North Carolina,* 391 U.S. 543 (1968), stated its understanding of the *Bumper* decision to be as follows, to wit:

"We believe that the *Bumper* case stands for the proposition that it is possible to give valid consent to search even after the existence of the warrant is made known, but the State must show by clear and convincing evidence that the consent is not based upon the warrant and was not coerced by other factors. It is conceivable

that a person could give a voluntary and uncoerced consent to search even though he had been informed that the officers had a search warrant, but the State would bear the burden of showing that the consent was sufficiently independent of the warrant to remove the taint of its coercive nature."

The Tennessee Court, after reviewing the conduct of Earls and his statement when the sheriff started reading the original warrant, then concluded:

". . . Earls voluntarily consented to and invited the search. That consent was neither coerced nor compelled by the search warrant. . . . "

In *Hock* v. *State,* 259 Ark. 67, 531 S.W. 2d 701 (1976), the issue was whether the State had sustained its burden of showing consent. We there pointed out:

"The latest expression with reference to the burden cast upon the State to show consent to search is contained in *Bumper* v. *North Carolina,* 391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968), where it is stated:

'When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.'

The Supreme Court, in *Bumper, supra,* cited *Judd* v. *United States,* 190 F. 2d 649 (D.C. Cir. 1951), favorably as indicating the extent of the burden placed upon the State to show consent. With reference to searches and seizures made without a proper warrant, the Court in

*Judd* v. *United States, supra* said:

'Searches and seizures made without a proper warrant are generally to be regarded as unreasonable and violative of the Fourth Amendment. True, the obtaining of the warrant may on occasion be waived by the individual; he may give his consent to the search and seizure. But such a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. . . . The Government must show a consent that is 'unequivocal and specific' . . . 'freely and intelligently given.' . . . Thus 'invitations' to enter one's house, extended to armed officers of the law who demand entrance, are usually to be considered as invitations secured by force. . . . Intimidation and duress are almost necessarily implicit in such situations; if Government alleges their absence, it has the burden of convincing the court that they are in fact absent."

In *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), the issue before the Court was what the prosecution must prove to demonstrate that a consent, given by one not under arrest, was voluntary. In holding that voluntary consent did not require a *Miranda* warning, the Court, with respect to "coercion" or "consent", stated:

"But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed. In the words of the classic admonition in *Boyd* v. *United States,* 116 U.S. 616, 635:

'It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can

only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.'

The problem of reconciling the recognized legitimacy of consent searches with the requirement that they be free from any aspect of official coercion cannot be resolved by any infallible touchstone. To approve such searches without the most careful scrutiny would sanction the possibility of official coercion; to place artificial restrictions upon such searches would jeopardize their basic validity. Just as was true with confessions, the requirement of a 'voluntary' consent reflects a fair accommodation of the constitutional requirements involved. In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents. Those searches that are the product of police coercion can thus be filtered out without undermining the continuing validity of consent searches. In sum, there is no reason for us to depart in the area of consent searches, from the traditional definition of 'voluntariness.' ''

In *McCreary* v. *Sigler*, 406 F. 2d 1264 (8th Cir. 1969), one Officer Parker arrived at an apartment with an invalid search warrant. When one Mr. Bradbury, the occupant, was advised that the officers had a search warrant, he got up to get a drink and then said: "You don't need it. Go ahead and search. I pay the rent here." In holding the warrant invalid, the Eighth Circuit (Matthes, Gibson and Lay) stated:

"Upon reconsideration of *Bumper* v. *North Carolina*, 391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968), decided subsequent to the district court's findings of

'consent' below, we hold that any consent given by Bradbury must be viewed as 'impliedly coerced.' The Supreme Court has expressly held that ' "consent" * * * given only after the official conducting the search has asserted he possesses a warrant' is not a valid consent when the only showing is 'no more than acquiescence to a claim of lawful authority.' Id. at 548-549, 88 S. Ct. at 1792.

The facts supporting 'voluntary consent' are much stronger in *Bumper* than here. See 391 U.S. at 547 n. 8, 88 S. Ct. 1788 n. 8. The Supreme Court, however, has made clear:

> 'When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion — albeit colorably lawful coercion. Where there is coercion there cannot be consent.' Id. at 550, 88 S. Ct. at 1792.

See also *Overton v. New York*, 393 U.S. 85, 89 S. Ct. 252, 21 L. Ed. 2d 218 (1968) (per curiam).

An officer must have a legal basis for obtaining access to private living quarters under the badge of his office and the authority of the law. The clear logic of this rule is that a search conducted by reason of consent given upon representation of a warrant validly issued will not be lawful unless the warrant itself was validly issued."

I submit that whether you follow the line of authorities cited by the majority or the ruling of the Eighth Circuit in *McCreary v. Sigler*, 406 F. 2d 1264 (1969), there is not sufficient proof in this record to sustain the State's burden of proving a consent to search — *i.e.* by clear and positive evidence.

For the reasons stated, I respectfully dissent.

HOLT, J., joins in this dissent.