Fred **ARMOUR**, Petitioner-Appellee,

v.

W. D. **SALISBURY**, Superintendent, Respondent-Appellant.

No. 73–1315.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1973.

Decided Feb. 20, 1974.

Jack H. Cook, Columbus, Ohio, for respondent-appellant; William J. Brown, Atty. Gen., Jeffrey L. McClelland, Asst. Atty. Gen., Columbus, Ohio, on brief.

Michael E. Geltner, ACLU of Ohio, Columbus, Ohio, for American Civil Liberties Union, amicus curiae.

Lucas, Prendergast, Albright, Gibson, Brown & Newman, Timothy J. Ucker (court-appointed), Columbus, Ohio, on brief, for petitioner-appellee.

Before WEICK, PECK and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

In May of 1968 the appellee was convicted in an Ohio state court on counts II and IV of a four-count indictment charging various narcotics violations. He was given an indeterminate sentence under count II, charging illegal possession of marijuana, of 2–15 years, and a sentence under count IV, charging an illegal sale of the same drug, of 20–40 years. The sentences were to run consecutively. After exhausting state remedies, appellee petitioned the United States District Court for a writ of habeas corpus. The present appeal is from the grant of that writ.

In May of 1967 Richard Lee Sees was contacted by an undercover agent of the Federal Bureau of Narcotics and Dangerous Drugs who asked him to purchase marijuana for him. On July 15 Sees and the agent drove to the vicinity of the apartment building in which appellee lived. Later, Sees testified at appellee's trial that he had gone inside the building and purchased from appellee seven or eight ounces of marijuana— five ounces of which he sold to the agent. Although appellee was indicted for this alleged sale, the jury found him not guilty.

Sees also testified that on July 26, 1967 he again purchased marijuana from appellee and again sold it to the agent. Sees, himself, was arrested and charged on this transaction. His testimony led to the conviction of appellee for the sale of marijuana on that date.

One Glenn Allen Vance was arrested on September 2, 1967 on charges of publishing a forged instrument and possession of marijuana. He was repeatedly interrogated by police officers between September 2 and September 5. At the conclusion of the questioning, he was given a twenty dollar bill, the serial number of which was recorded, and was told to go to appellee's residence and purchase marijuana. Vance followed a part of his instructions: he went to appellee's apartment and brought marijuana, but he did not return to the police station.

As a result of the information which the police now had, a raid was planned on appellee's apartment building. Shortly before midnight on September 5, Detective Newman and the prosecutor prepared the following affidavit for a search warrant:

Ray Newman, being first duly sworn according to law, deposes and says that he believes and has good cause to believe that unknown quantities of cannabis sativa (marijuana) or other narcotic drugs are being concealed in or about the building and individual apartments numbered 1, the office, 2, 3 and 4 and other vacant apartments under the custody and control of Fred Armour and located at 279 Park Street, Akron, Ohio, also known as the Armour Apartments.

The affiant further says that he believes and has good cause to believe that the said cannabis sativa is in the possession and control of Fred Armour, the manager and custodian of the building located at 279 Park Street, Akron, Ohio, and the above named articles should be seized along with Fred Armour who will be charged with violation of 3719.20(A) Revised Code of Ohio.

This knowledge is based on the following facts:

Information from a reliable informant whose name the affiant has and will reveal to this court if requested and whose information in the past has proved reliable, that:

1. He, the said informant, purchased a quantity of cannabis sativa from the above named Fred Armour at 279 Park Street, Akron, Ohio, on or about 3:00 a. m., September 2, 1967.

2. Fred Armour is the manager and custodian of the apartment building located at 279 Park Street, Akron, Ohio, and known as the Armour Apartments.

3. The informant has personally observed Fred Armour in apartment number 1, the office of the said Armour Apartments; apartment number 2, the residence of Fred Armour and his wife, Addie Armour; apartment number 3, wherein the informant negotiated the purchase of the cannabis sativa from Fred Armour; apartment number 4, the room through which Fred Armour passed to gain access to the other vacant apartments, over which Fred Armour has custody and control, wherein the cannabis sativa is stored.

4. The informant has purchased quantities of cannabis sativa at 279 Park Street, Akron, Ohio, on several occasions, and on each occasion Fred Armour has left the informant isolated in one apartment and entered another apartment for the purpose of obtaining the cannabis sativa.

The reliable informant referred to in the affidavit was Glenn Vance.

Based on this affidavit a warrant was obtained and executed in the early morning hours of September 6, 1967. Seized in the search were a bag of marijuana and the twenty dollar bill that had been given to Vance by the prosecutor, evidence used to convict appellee on the possession charge. The police found Vance at the residence in a stupor, apparently caused by his use of some the marijuana he had bought.

On September 8, 1967, Vance signed a written confession that he had purchased marijuana from appellee on or about September 1. However, at appellee's trial, Vance said that the September 1 purchase was not from appellee but from another person. Furthermore, he stated that he had never bought marijuana from appellee. Consequently, the charge against appellee for the sale to Vance was dismissed for lack of evidence, but appellee was convicted for possession of the marijuana seized in the raid.

Appellee's conviction was affirmed by an Ohio appellate court, and the Ohio Supreme Court denied review. Subsequently, he petitioned the court below for a writ of habeas corpus. A hearing was held by the court on the basis of the state court record and some live testimony with respect to the several constitutional violations alleged by appellee. Of the seven claims presented, the court found five to be without merit. It upheld two of the claims which we now consider.

The court found that although the search warrant appeared valid on its face, in reality probable cause was not established because, contrary to the statement in the affidavit, the informant, Vance, had not given reliable information in the past. This reasoning was based, in large measure, on Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)—decisions in which the Supreme Court held that when the affidavit for a search warrant is based on information given by an undisclosed informant, the affiant must support his claim that the informant is credible. After considering the testimony of both Vance and the affiant Newman, the district court concluded that the statement that the informant had given reliable information in the past was inaccurate. Absent this statement, the court found that the affidavit did not contain sufficient support for the credibility of the informant. It was therefore found that probable cause did not exist for the issuance of the warrant.

Were the disputed statement as to the giving of reliable information in the past the only support for the credibility of the informant, the validity of the warrant might be questionable. *See* United States v. Harwood, 470 F.2d 322 (10th Cir. 1972); United States v. Upshaw, 448 F.2d 1218, 1221 n. 3 (5th Cir. 1971). We do not reach that issue here. We are required to view the affidavit as a whole. If there exists a basis for crediting the informant, excluding the incorrect statements, then there was probable cause to justify issuance of the warrant. *Cf.* United States v. Ventresca, 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1964). The affidavit stated that the informant had purchased marijuana on several occasions from the appellee. In giving this information to the police, Vance admitted that he had participated in a crime under Ohio law. An admission against penal interest, as this was, is a significant, and sometimes conclusive, reason for crediting the statements of an informant. United States v. Harris, 403 U.S. 573, 583–585, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1961). The language of the Supreme Court in *Harris* is a guide for our decision:

> Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility —sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a "break" does not eliminate the residual risk and opprobrium of having admitted criminal conduct. Concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another. But here the informant's admission that over a long period and currently

he had been buying illicit liquor on certain premises, itself and without more, implicated that property and furnished probable cause to search. 403 U.S. at 583–584, 91 S.Ct. at 2082.

The affidavit now before us contained sufficient indicia of credibility for the magistrate to find probable cause to issue the warrant. It was clear from the face of the affidavit that the informant had, by giving the information, admitted a crime—and one that carried a substantial penalty. Furthermore, the affidavit described the place where the sale occurred and the marijuana was kept. The informant's knowledge was based not merely on one illegal sale but upon several.

As already mentioned, two days after the search of appellee's apartment, Vance signed a confession in which he stated that he had purchased marijuana from appellee on September 1, the sale referred to in the affidavit. Subsequently, at appellee's trial, Vance denied that he had ever bought marijuana from appellee, and stated that his confession was the result of police duress. Although a search warrant based on information fabricated by the police or forced involuntarily from an informant could raise grave constitutional questions, statements in affidavits for probable cause are not subject to the same rigorous standards as those governing admissibility of evidence at trial. Spinelli v. United States, *supra* at 419 of 393 U.S., 89 S.Ct. 584. In the present case the statements in the warrant are independently corroborated by Vance's confession. Absent compelling evidence that the informant did not make the statements which were the basis of the affidavit, the decision of the magistrate on probable cause should be left undisturbed. Our examination of the record in this case convinces us that the magistrate was correct.

Appellee was also convicted for a sale of marijuana on July 26, 1967 to Richard Sees. At trial Sees gave crucial testimony against appellee. Comment-

ing on this testimony, the prosecutor, in his closing argument, made the following statements:

> Now, what does he have to gain? There is nothing that can be done to him now. He is already sentenced. He is in the penitentiary. There is not a thing that can be done for him, but he is here because he is willing to tell the truth.
>
> *         *         *         *         *         *
>
> Now, they [defense counsel] also spoke about Sees having something to gain, and pointing to this indictment. Well, that is completed now. That is over. Sees could have told us to go fly a kite, and nothing could be changed, because that is an order of the Court. He didn't have to come here and testify in this case. That case is done, and as it says he was sentenced from ten to twenty years, as it says in there.

Sees had been convicted and was sentenced in the fall of 1967 to a term of ten to twenty years in the Mansfield, Ohio, Reformatory. The prosecutor visited him in the reformatory and solicited his testimony against appellee. During the meeting the prosecutor told Sees that while testifying he might be asked whether any promises were made to him in return for his testimony. He further stated that while no promises could be made specifically in consideration for Sees' testimony, he would help Sees receive probation whether or not he testified. Shortly before the trial Sees was transferred to the county jail and never returned to Mansfield. Five months after trial he was released from jail pursuant to Ohio's shock probation statute. Ohio Revised Code § 2947.061. As a consequence he served less than one year out of a sentence of ten to twenty years.

The district court found that, contrary to the statements of the prosecutor, Sees did have something to gain from his testimony. He was awaiting a decision on his petition for probation, and he had a sentence of up to twenty years hanging over his head. Although

the prosecutor told Sees that he would help him either way, the prior statements of the prosecutor about the questions that would be asked at trial and also the motivation for the visit—to discuss the possible testimony—could, according to the district court, reasonably have caused Sees to conclude that the vigor of the prosecutor's efforts for probation would be determined by whether Sees testified. Upon this basis the district court held that the prosecutor's statement to the jury was deliberately misleading and that appellee in consequence was denied due process of law.

In Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1970), the Supreme Court considered a case in which the key witness was promised that he would not be prosecuted if he would testify against his co-conspirator. When asked by defense counsel whether any promises of leniency had been made, the witness lied and said that none had. And in his closing argument the prosecutor told the jury that no promises had been made to the witness.

Relying upon a consistent line of cases, e. g., Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court held that the witness's credibility was "an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it." 405 U.S. at 155, 92 S.Ct. at 766. The conviction was reversed, and the case was remanded for a new trial.

It is true that there is a factual distinction between the situation in Giglio and that now before us. Sees was not asked at trial whether promises had been made to him to testify. But the basic tenet of Giglio does not depend on whether misleading information was given to the jury in the form of a closing argument by a prosecutor rather than through the testimony of a witness.

We need not decide whether the prosecutor on the particular facts presented here had an affirmative duty to disclose what he had told Sees about helping him. The critical error was that the prosecutor deliberately misled the jury by assuring it that Sees had nothing to gain by giving his testimony. The only fair and logical inference is that Sees would conclude from his conversation with the prosecutor that he would receive more help in securing probation if he testified against appellee than otherwise would be the case.

The judgment of the district court is therefore affirmed in part and reversed in part. The action is remanded to the district judge for the entry of an order granting the writ of habeas corpus only with respect to the conviction and sentence of appellee under the count of the indictment charging the illegal sale to Sees, and denying the writ with respect to the conviction and sentence for illegal possession. The issuance of the writ to the extent herein indicated shall be conditioned upon the right of the state to retry appellee on the sale charge within such time as the district court shall determine.