[No. 4077–II.   Division Two.   April 14, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. PAULA L. FISHER, ET AL, *Appellants.*

*Douglas W. Tufts,* for appellants.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

PETRICH, J.—Paula Lynn Fisher and Thomas Joseph Lancaster appeal their convictions of unlawful possession of a controlled substance found in their residence during a search made pursuant to a warrant. We reverse on the ground that the supporting affidavit did not contain sufficient underlying circumstances from which the issuing magistrate could have made an independent finding of probable cause.

On January 30, 1979, a Pierce County sheriff's officer presented an affidavit in support of a search warrant to a judge. The warrant issued, and some 2 days later, officers, finding no one present in the described residence, forced entry and conducted a search. Inside, the officers found two live marijuana plants, an additional amount of marijuana, suspected amphetamines, suspected cocaine, other unknown pharmaceutical pills, narcotics paraphernalia, and other contraband. By amended information defendants were charged with possession of phenobarbital, classified under the Uniform Controlled Substances Act, RCW 69.50.401.

On April 18, 1979, upon stipulated findings of fact, the

trial court found defendants guilty as charged. Defendants twice unsuccessfully moved to suppress the evidence seized from their residence.

Although defendants enumerate several other assignments of error regarding the issuance and execution of the search warrant,[1] the dispositive question on appeal is whether the supporting affidavit contained sufficient underlying circumstances from which a neutral and detached magistrate could have independently determined the existence of probable cause. We respond in the negative. The supporting affidavit in question states in relevant part:

> That within the past 72 hours a reliable informant, known to the affiant, has visited the above residence and while there observed LSD and marijuana.
>
> The informant is reliable in that he/she has given information regarding drug trafficing [sic] and use in the past which has proven to be true and correct. The informant has made two controlled buys to wit: the informant was searched, given money, observed to enter and return from a residence with controlled substances purchased from within.
>
> The informant stated that persons who live at and visit the residence are known to conceal drugs on their persons and in their vehicles.. The informant further stated that the residents, [sic] Tom Lancaster, major sources of income were the sale of drugs and stolen property.

██ ██ Under the 2–prong test set forth in *Aguilar v. Texas,* 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509 (1964), and as interpreted in *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969),

---

[1]Specifically, defendants assign as error the trial court's refusal to suppress on the ground that discrepancies in the address and physical description of the residence contained in the supporting affidavit allowed the warrant to issue upon an insufficient showing of particularity. Defendants also challenge the legality of the execution of the warrant, on the ground that once it was discovered that the target residence was not as described in the search warrant and affidavit, the executing officers ought to have postponed the search pending clarification from the issuing magistrate. Because of the manner in which we have disposed of this case, we need not address these or other incidental arguments defendants make in support of reversal.

an affidavit in support of a search warrant must be written with sufficient detail that at the very least the issuing magistrate will be informed of (1) some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and (2) some of the underlying circumstances from which one may conclude that (a) the informant was "credible" or (b) his information reliable. In *Aguilar,* 378 U.S. at 115, the court recognized that:

> Otherwise, "the inferences from the facts which lead to the complaint" will be drawn not "by a neutral and detached magistrate," as the Constitution requires, but instead, by a police officer "engaged in the often competitive enterprise of ferreting out crime," or, as in this case, by an unidentified informant.

(Citations omitted.)

In our review of the affidavit we are mindful that only the probability and not a prima facie showing of criminal activity is the standard of probable cause. *Beck v. Ohio,* 379 U.S. 89, 96, 13 L. Ed. 2d 142, 147, 85 S. Ct. 223 (1964). Where a magistrate has found probable cause, we should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a common sense, manner. *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965). A judicial determination of probable cause will be sustained so long as there was a substantial basis for the magistrate to conclude that contraband was probably present. *State v. Walcott,* 72 Wn.2d 959, 435 P.2d 994 (1967).

In the present case defendants argue that the first prong of *Aguilar,* commonly known as the "basis of the knowledge" prong, was not satisfied because the affidavit did not contain an explanation of how the informant knew that the substances he observed were actually LSD and marijuana. We need not address this issue as we are convinced the second "veracity" prong of *Aguilar–Spinelli* was clearly violated.

When police affiants attempt to establish the credi-

bility of an informant as part of their task of establishing that probable cause exists for a search made or to be made exclusively or primarily upon that informant's story, they generally do so by reference to the past performance of that informant. *See, e.g., State v. Laursen,* 14 Wn. App. 692, 544 P.2d 127 (1975); 1 W. LaFave, *Search and Seizure* § 3.3, at 508 (1978). The question then arises: what kind of showing with respect to the past performance of the informant will suffice?

In analyzing the credibility of known, but unidentified (to the magistrate) informants, where information given by an informer was the exclusive or primary basis for issuance of a search warrant, our courts have generally found the second prong of *Aguilar* satisfied where the information either led to arrests and convictions, *see State v. Partin,* 88 Wn.2d 899, 567 P.2d 1136 (1977); *State v. Hill,* 17 Wn. App. 678, 564 P.2d 841 (1977); *State v. Neff,* 10 Wn. App. 713, 519 P.2d 1328 (1974); *State v. Hodge,* 5 Wn. App. 639, 490 P.2d 126 (1971), or, at least, to an arrest. *See State v. Frye,* 26 Wn. App. 276, 613 P.2d 152 (1980); *State v. Agee,* 15 Wn. App. 709, 552 P.2d 1084 (1976); *State v. Cowles,* 14 Wn. App. 14, 538 P.2d 840 (1975); *State v. Thompson,* 13 Wn. App. 526, 536 P.2d 683 (1975); *State v. Pate,* 12 Wn. App. 237, 529 P.2d 875 (1974).[2]

---

[2]Cases which have not required a recitation of the results of information provided by a confidential informant are factually distinguishable. *See, e.g., State v. Patterson,* 83 Wn.2d 49, 62–65, 515 P.2d 496 (1973) (issuing magistrate could have relied upon independent police sources rather than upon "reliable and credable" [*sic*] informants); *State v. Barnes,* 76 Wn.2d 234, 235–37, 456 P.2d 337 (1969) (warrant did not issue primarily on basis of information provided by "very reliable informant"); *State v. Malbeck,* 69 Wn.2d 695, 696, 419 P.2d 805 (1966) ("reliable informant, who had previously given . . . truthful information regarding criminal activities," was sufficient where affiant personally testified before justice of peace, regarding past reliability of informant); *State v. Trasvina,* 16 Wn. App. 519, 520, 557 P.2d 368 (1976) (where exact wording of recorded conversation over a telephone with magistrate was undisclosed, description of informant as one who had given "reliable information several times in the past" sufficient); *State v. Laursen,* 14 Wn. App. at 694 (assertion that over an 8–month period informant had given information which resulted in "twenty–five drug cases" sufficient where affidavit also stated that "each and everything the informant had told him was

In the present case the affiant attested to the informant's credibility simply by stating that "he/she has given information regarding drug trafficing [*sic*] and use in the past which has proven to be true and correct." Not only does the affidavit fail to disclose whether the information ever led to any arrests or convictions, it also fails to reveal whether the informant *generally* provided "true and correct information." As one perceptive commentator has written:

> "Previously reliable informer," "informer *of proven reliability*," "informer who has given accurate information in the past"—these vague phrases hint at a consistent history of reliability, but are really highly ambiguous. The instances of inaccurate information may have outnumbered instances where the information proved correct. The information may have led directly to an arrest and conviction or may only have served as a vague lead which later was verified in some particulars but not in others. * * *
>
> The "reliable information in the past" recital * * * lacks any factual indication of how reliable the informer is. The magistrate is, in effect, relying upon the factual determination of the arresting officer that the informer is sufficiently reliable, and not upon his own independent judicial determination. This does not square either with the *Aguilar* demand for "underlying circumstances" or with the requirement that the essential facts supporting the assertion of probable cause be made known to the reviewing magistrate. Where reliability is important, the facts supporting reliability are as essential as any others to a showing of probable cause. With such facts, the magistrate can challenge the reasonableness of the officer's belief in his informer's reliability. When the further possibility is considered that an officer has not made a good faith assessment of the informer's reliability, or may even know him to be unreliable, the dangers in acceptance of vague averments of reliability become even more

---

found to be true."); *State v. Wilson*, 9 Wn. App. 909, 910–11, 515 P.2d 832 (1973) (opinion merely revealed that informant had given "reliable information" concerning violations of "state drug laws" on a number of occasions, but stated that affidavit essentially identical to one in prior case which mentioned that information had led to arrests and convictions).

obvious. Judicial acceptance may tempt officers to make superficial averments of reliability without proper support; and some officers, while they may be above wholesale fabrication, may not be adverse to some stretching of the truth on occasion.

1 W. LaFave, at 516–17, citing Comment, *Informer's Word as the Basis for Probable Cause in the Federal Courts,* 53 Cal. L. Rev. 840, 846, 848 (1965). Although a number of cases in other jurisdictions regard as adequate general assertions that prior information has proved to be "correct," *United States v. Guinn,* 454 F.2d 29 (5th Cir. 1972), or "true and correct," *see, e.g., State v. Caldwell,* 25 N.C. App. 269, 212 S.E.2d 669 (1975), we find more persuasive those decisions which have held such assertions to be conclusory and thus insufficient. *See, e.g., Armour v. Salisbury,* 492 F.2d 1032 (6th Cir. 1974) (dictum); *Byars v. State,* 259 Ark. 158, 533 S.W.2d 175 (1976); 1 W. LaFave, at 515–16, and other cases cited therein.

Where, as here, an affidavit in support of a search warrant states merely that a confidential informant's past information has been "true and correct," without providing further underlying facts from which the issuing magistrate can independently assess the informant's credibility, we hold that *Aguilar's* second prong remains unsatisfied.

Next, we analyze the effect of the language pertaining to "controlled buys." Contrary to the State's assertions, the affidavit is insufficient because it states that the informant made "two controlled buys" at "*a* residence" (italics ours), although, in the proper context, the statement that the informant made a controlled buy might have buttressed his credibility. *See State v. Jansen,* 15 Wn. App. 348, 351, 549 P.2d 32 (1976) (where informant made a controlled buy at *the* residence). Since the affidavit does not state that these buys were made at the residence in question,[3] or even from

---

[3]In fact, at the suppression hearing, counsel for both defendant and the State treated the language regarding the controlled buys as referring, in general, to the informant's past cooperation with the police, rather than to specific transactions at the residence of defendants.

defendants, it is no more probative of the informant's credibility than the language immediately preceding it.

Finally, we note that the statement that "persons who live at and visit the residence are known to conceal drugs on their persons and in their vehicles" and that the "major sources of income [of defendants] were the sale of drugs and stolen property" constitutes nothing more than "a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision." *Spinelli,* 393 U.S. at 414.

Since the affidavit in the present case does not meet the second prong set forth in *Aguilar,* a neutral and detached magistrate could not have found a substantial basis from which to independently find probable cause. Accordingly, we reverse.

REED, C.J., and PEARSON, J., concur.

Reconsideration denied May 13, 1981.

Review granted by Supreme Court July 27, 1981.