[No. 47839-2.   En Banc.   January 28, 1982.]

THE STATE OF WASHINGTON, *Petitioner*, v. PAULA FISHER, ET AL, *Respondents*.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for petitioner.

*Douglas W. Tufts,* for respondents.

DOLLIVER, J.—Paula Lynn Fisher and Thomas Joseph Lancaster were convicted of possession of a controlled substance after their residence was searched by Pierce County Sheriff's officers pursuant to a search warrant. Defendants appealed contending the affidavit given by the policeman in requesting the search warrant was defective and insufficient to establish probable cause. They also argue that the search warrant itself was defective as it contained an erroneous address and description of the building. The Court of Appeals reversed the conviction, holding the credibility of the informant was not established by the affidavit; it did not consider the other two issues raised. *State v. Fisher,* 28 Wn. App. 890, 626 P.2d 1020 (1981). We reverse the Court of Appeals, hold the affidavit and search warrant were adequate, and affirm the convictions.

On January 30, 1979, a Pierce County police officer presented an affidavit to the court in support of a complaint for a warrant to search for controlled substances at "3514 Madison" in Tacoma. The allegation of probable cause was based on the following:

That within the past 72 hours a reliable informant, known to the affiant, has visited the above residence and while there observed LSD and marijuana.

The informant is reliable in that he/she has given information regarding drug trafficing [sic] and use in the past which has proven to be true and correct.

The informant has made two controlled buys to–wit: the informant was searched, given money, observed to enter and return from a residence with controlled substances purchased from within.

The informant stated that persons who live at and visit the residence are known to conceal drugs on their persons and in their vehicles. The informant further stated that the residents [sic], Tom Lancaster, major sources of income were the sale of drugs and stolen property.

A search warrant was issued the same day and executed 2 days later.

Upon finding no one home at 3514 *South* Madison, the police entered and searched the residence. They seized two marijuana plants, suspected cocaine and other drugs, a .357 revolver, and other assorted items suspected of being stolen. The defendants returned home during the search. They were arrested and later charged with possession of a controlled substance (phenobarbital).

Twice the defendants moved unsuccessfully to suppress the seized evidence. Defense counsel then stipulated the facts and the trial court entered a finding of guilty.

The paucity of the record greatly hinders our review of the totality of the circumstances surrounding the request and issuance of the warrant. As a result we must accept the affidavit on its face and any doubts should be resolved in favor of the warrant. *State v. Partin,* 88 Wn.2d 899, 904, 567 P.2d 1136 (1977), citing *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965).

■■ The law as set forth in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) and *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969) requires the State to satisfy a 2–prong test in order to obtain a search warrant. Under the second or "veracity" prong, sufficient facts must be presented so the magistrate may determine either the inherent credibility or reliability of the informant on the particular occasion. Affidavits for search warrants must be tested in a commonsense manner rather than hypertechnically as long as the basic *Aguilar/Spinelli* requirements are met. *State v. Partin, supra.* "The support for issuance of a search warrant is sufficient if, on reading the affidavits, an ordinary person would understand that a violation existed and was continuing at the time of the application." *State v. Clay,* 7 Wn. App. 631, 637, 501 P.2d 603 (1972), followed in *State v. Partin, supra.*

To meet the *Aguilar/Spinelli* test the credibility of the informant must be demonstrated. The mere statement that an informant is credible is not sufficient (*Aguilar v. Texas, supra*), whereas it is almost universally held to be sufficient if information has been given which has led to arrests and convictions. 1 W. LaFave, *Search and Seizure* § 3.3, at 509 (1978); *see also McCray v. Illinois,* 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056 (1967); *State v. Partin, supra.*

This case lies somewhere between these two positions. Affiant stated that the informant had given him information proven to be true and correct in the past. While this is more than drawing the conclusion that the informant is credible and admittedly less than stating the facts as to why the past information has proven to be "true and correct", it still is a factual statement—not a conclusion of the affiant. We hold in this case that it is enough to enable a neutral magistrate to determine if the informant is credible.

There is substantial authority which holds general allegations such as those before us are sufficient. *Gonzales v. State,* 577 S.W.2d 226 (Tex. Crim. App), *cert. denied,* 444 U.S. 853, 62 L. Ed. 2d 71, 100 S. Ct. 109 (1979); *State v. Caldwell,* 25 N.C. App. 269, 212 S.E.2d 669 (1975); *see also*

1 W. LaFave, *supra* at 515 n.59–68. In *Aguilar v. Texas, supra,* the Supreme Court distinguished and approved of an affidavit which it upheld in *Jones v. United States,* 362 U.S. 257, 268, 4 L. Ed. 2d 697, 80 S. Ct. 725 (1960). The *Jones* affidavit alleged that the informant "'has given information to the undersigned on previous occasion and which was correct". This type of allegation informs the magistrate why the affiant believed the informant to be reliable. It states a fact and is more than a bare assertion or conclusion. *Accord, United States v. Harris,* 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971).

The Court of Appeals, however, felt that the statements in the affidavit were conclusory and thus insufficient to support the contentions of the informant's reliability. *State v. Fisher, supra.* We disagree. When the affidavit is viewed as a whole in a nontechnical manner it is nonconclusory and bears enough information to support the issuance of a valid warrant. When faced with reviewing the totality of the affidavit and, as in the present case, we lack an adequate record, we must ask what a reasonable person could conclude.

What did the affidavit disclose? The magistrate was told that within the past 72 hours (fact) a reliable informant (conclusion) known to the affiant (fact) visited the residence (fact) and observed LSD and marijuana (fact). The informant is reliable (establishing conclusion) because the informant had given information regarding drug trafficking (fact) and the informant had proven in the past to be true and correct (fact). The informant had made two controlled buys (fact) and information on how they were conducted was given (fact). The informant also stated persons who live at or visit the residence conceal drugs (informant's conclusion, not affiant's) and that resident Tom Lancaster's (fact) major sources of income were drug sales and stolen property (informant's conclusion again, not affiant's).

There are sufficient facts, not just numerically but substantially, for the magistrate reasonably to conclude that a violation existed and was continuing at the time of the affi-

davit. *State v. Clay, supra.* As we stated earlier, any doubt should be in favor of the warrant. *State v. Partin, supra.* Defendants do not provide us with a record sufficient to conclude otherwise.

■ The second issue on the validity and execution of the search warrant was not reached by the Court of Appeals: defendants' claim that the warrant was invalid because it failed to state the address of the house to be searched with sufficient certainty. The warrant stated the address as "3514 Madison Tacoma" when in fact it was *South* Madison. This is not fatal since "'It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.'" *State v. Rood,* 18 Wn. App. 740, 743–44, 573 P.2d 1325 (1977), citing *Steele v. United States,* 267 U.S. 498, 503, 69 L. Ed. 757, 760, 45 S. Ct. 414, 416 (1925). There are three general sources of information that may be considered when a correct address is missing: (1) other physical descriptions of the premises contained in the warrant or affidavit (*State v. Trasvina,* 16 Wn. App. 519, 522, 557 P.2d 368 (1976)); (2) information concerning the location of the premises based upon the officer's personal knowledge of the location or its occupants (*State v. Davis,* 165 Wash. 652, 5 P.2d 1035 (1931)); and (3) the personal observations of the officer or officers at the time the warrant is executed. *See State v. Rood, supra.*

The key to this problem is there must be assurances that a mistaken search would not occur; the burden of proof lies with the moving party. *State v. Trasvina, supra* at 523. This burden has not been met by the defendants. There is nothing in the record which would show adequate precautions were not taken except the allegation that there are four other Madisons in Pierce County. There is no showing there was a similar residence that could have been mistaken at the alternative addresses nor any attempt by defendants to show that the officers did not know the house in question or if the affiant was among the searching officers. In other words, the defendants made no showing that a mistaken

search could have occurred. Defendants did send out an investigator to take a picture of the residence, but not the alternative addresses. The result is that we are given no record from which we can discern that the warrant was violative of the Fourth Amendment and on its face it appears that a reasonable person could ascertain the Madison location.

The question on whether the residence is a 1–story building (with an attic) or a 2–story building depends on one's point of view. From the photograph in the record, it is apparent a reasonable person could characterize it as the former. As for whether a mistake could have occurred, no evidence is offered to answer the question in the affirmative. *See State v. Trasvina, supra.* The question as to whether the warrant was valid must be resolved in favor of validity since no evidence was offered to alter this conclusion.

The Court of Appeals is reversed and the convictions affirmed.

BRACHTENBACH, C.J., and STAFFORD, DORE, and DIMMICK, JJ., concur.

UTTER, J. (dissenting)—The majority, reversing a unanimous Court of Appeals decision, establishes a rule for search warrants that completely fails to meet either the "veracity" or "personal knowledge" components demanded by the Fourth Amendment as interpreted by the United States Supreme Court. This error would be serious if limited to just this case. It is not. The rules we furnish to our lower courts and police officers regarding requirements for search warrants form the basis for frequent daily application. If we furnish erroneous standards, as the majority does in this case, we must bear the serious consequences of future mistakes that will invalidate otherwise proper convictions for more serious crimes.

With respect to the "veracity" requirement, the officer affiant stated: "The informant is reliable in that he/she has

given information regarding drug trafficing [*sic*] and use in the past which has proven to be true and correct." The statement provides no meaningful inference of reliability. I agree entirely with the unanimous Court of Appeals in this respect:

> Not only does the affidavit fail to disclose whether the information ever led to any arrests or convictions, it also fails to reveal whether the informant *generally* provided "true and correct information." As one perceptive commentator has written:

>> "Previously reliable informer," "informer of proven reliability," "informer who has given accurate information in the past"—these vague phrases hint at a consistent history of reliability, but are really highly ambiguous. The instances of inaccurate information may have outnumbered instances where the information proved correct. The information may have led directly to an arrest and conviction or may only have served as a vague lead which later was verified in some particulars but not in others. * * *

>> The "reliable information in the past" recital * * * lacks any factual indication of how reliable the informer is. The magistrate is, in effect, relying upon the factual determination of the arresting officer that the informer is sufficiently reliable, and not upon his own independent judicial determination. This does not square either with the *Aguilar* [*v. Texas*, 378 U.S. 108] demand for "underlying circumstances" or with the requirement that the essential facts supporting the assertion of probable cause be made known to the reviewing magistrate. Where reliability is important, the facts supporting reliability are as essential as any others to a showing of probable cause. With such facts, the magistrate can challenge the reasonableness of the officer's belief in his informer's reliability. When the further possibility is considered that an officer has not made a good faith assessment of the informer's reliability, or may even know him to be unreliable, the dangers in acceptance of vague averments of reliability become even more obvious. Judicial acceptance may tempt officers to make superficial averments of reliability without proper support; and some officers, while they may be above wholesale fabrication, may not be

adverse to some stretching of the truth on occasion.
1 W. LaFave, [*Search and Seizure*], at 516–17, citing
Comment, *Informer's Word as the Basis for Probable
Cause in the Federal Courts,* 53 Cal. L. Rev. 840, 846,
848 (1965). Although a number of cases in other jurisdic-
tions regard as adequate general assertions that prior
information has proved to be "correct," *United States v.
Guinn,* 454 F.2d 29 (5th Cir. 1972), or "true and correct,"
*see, e.g., State v. Caldwell,* 25 N.C. App. 269, 212 S.E.2d
669 (1975), we find more persuasive those decisions which
have held such assertions to be conclusory and thus
insufficient. *See, e.g., Armour v. Salisbury,* 492 F.2d 1032
(6th Cir. 1974) (dictum); *Byars v. State,* 259 Ark. 158,
533 S.W.2d 175 (1976); 1 W. LaFave, at 515–16, and
other cases cited therein.

Where, as here, an affidavit in support of a search
warrant states merely that a confidential informant's past
information has been "true and correct," without provid-
ing further underlying facts from which the issuing
magistrate can independently assess the informant's
credibility, we hold that *Aguilar*'s second prong remains
unsatisfied.

*State v. Fisher,* 28 Wn. App. 890, 895–96, 626 P.2d 1020
(1981).

The majority presents two bases for disagreement with
the Court of Appeals. It first cites a comparable affidavit in
*Jones v. United States,* 362 U.S. 257, 268, 4 L. Ed. 2d 697,
80 S. Ct. 725, 78 A.L.R.2d 233 (1960) (implicitly approved
by reference in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d
723, 84 S. Ct. 1509 (1964)) which alleged the informant
"'has given information to the undersigned on previous
occasion and which was correct"; and second, the majority
claims that the underlying facts of the affidavit would per-
mit an impartial magistrate to conclude the informant was
credible. Neither basis justifies reversal of the Court of
Appeals, and both simply underscore the further infirmity
of the affidavit—that it does not articulate underlying cir-
cumstances by which a magistrate could independently
make a determination of probable cause.

With respect to the majority's first basis for disapproval,
the *Jones* affidavit is distinguishable from the affidavit in

this case in three important respects.

First, *Jones* is a questionable benchmark since it is a pre–*Aguilar* case and its affidavit was not evaluated under Aguilar's 2–prong test. *See* W. LaFave, *Search and Seizure* § 3.3, at 517 (1978). Under the principles derived from *Aguilar,* the *Jones* affidavit might very well be upheld "upon an admission–against–penal–interest theory". W. LaFave, *supra* at 517.

Second, the statements of the informant in *Jones* were not the only basis upon which the warrant issued. The informant's tip in *Jones* was corroborated by other sources who provided the same information and by the personal knowledge of the affiant officers that the suspects were narcotics users who had needle marks in their arms.

Third, the *Jones* affidavit stated the informant had given true and correct information *to the affiant.* The affidavit in this case stated only the informant had given information which had proven true and correct. Not only do we not know the meaningfulness of that information or the "track record" of the informant, we know nothing of the basis of the affiant's knowledge that the informant is reliable.

The majority's attempt to cure these defects by looking to the underlying facts of the affidavit as "a whole" is fruitless. While underlying circumstances of an affidavit may, if independently verifiable, corroborate the disclosures of an unreliable informant, no such circumstances exist in this case. The facts recited by the majority at page 966 do not permit "the magistrate to judge for himself both the probable credibility of the informant and the reliability of his information". *United States v. Harris,* 403 U.S. 573, 588, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971) (Harlan, J., dissenting). All of the majority's "facts", except the information about the controlled buys,[1] are dependent upon the

---

[1]Controlled buys, which are objectively verifiable by police, have no relation to an informant's credibility. *See* W. LaFave, *Search and Seizure* § 3.3, at 512 (1978). At most, they reflect only cooperativeness. Furthermore, as the Court of Appeals stated: "Since the affidavit does not state that these buys were made at the residence in question, or even from defendants, it is [not] probative of the

trustworthiness of the informant; none of the majority's facts are self–verifying and none corroborates the affidavit's bare allegation of credibility.

Finally, the affidavit reveals nothing of the officer affiant's personal knowledge of the informant's credibility or how the affiant came to know about the informant's tip. To satisfy the "personal knowledge" component of the *Aguilar/Spinelli* test, the affidavit must disclose not only how the "informant obtained his or her information," but how that information was then obtained by the affiant officer. Since the affidavit is silent as to circumstances corroborating the informant's credibility and as to the officer affiant's personal knowledge both of that credibility and of the informant's tip, a magistrate could not make an independent determination of probable cause without relying completely on supposition that the affiant had personal knowledge of the informant's disclosures and that the informant was credible. The majority's facts do nothing to eliminate conjecture and render the affidavit a tangible reference by which the magistrate could form an independent judgment. The following sample affidavit illustrates the point:

> That within the past 72 hours a reliable informant, known to the affiant, has visited the moon and observed green cheese.
>
> The informant is reliable in that he/she has given information regarding dairy products and their use in the past which has proven to be true and correct. The informant has made two controlled buys to wit: the informant was searched, given money, observed to enter and return from a residence with dairy products purchased from within.
>
> The informant stated that creatures who live on the moon are known to conceal cheese on their persons and in their vehicles. The informant further stated that one of the moon creatures, John Doe, gains a major source of income from the sale of cheese and stolen moon rocks.

---

informant's credibility . . ." (Footnote omitted.) *State v. Fisher,* 28 Wn. App. 890, 896–97, 626 P.2d 1020 (1981).

This affidavit, while obviously preposterous, also contains "facts." But those "facts" cannot provide a basis for finding probable cause unless a magistrate takes it on good faith that they were given by a reliable informant, and that the affiant has personal knowledge of that reliability and of the informant's disclosures. As such, those "facts" are really conclusions; conclusions which a magistrate is not authorized to make because they cannot be independently drawn. Unless we desire to permit the issuance of warrants to search the moon for green cheese, we must require more of a warrant than the bare affidavit that provided the sole basis for probable cause in this case.

ROSELLINI and WILLIAMS, JJ., concur with UTTER, J.