[Nos. 17298–1–I; 17321–9–I.   Division One.   May 28, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. SHAWN PATRICK FREEMAN, ET AL, *Appellants.*

*Terrence Kellogg,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Susan Roe, Deputy,* for respondent.

PEKELIS, J.—Shawn Patrick Freeman and Brett Alan Sheldon appeal the trial court's denial of their motion to suppress evidence seized pursuant to a search warrant.[1] They contend that the trial court erred in finding that the search warrant affidavit set forth sufficient facts to establish the informant's veracity and reliability. We affirm the trial court.

The facts are not in dispute. On October 9, 1985, the Seattle District Court issued a warrant to search the house, garage and car where Freeman and Sheldon resided. The warrant was based on an affidavit signed by Marc Edmonds, a King County detective. In his affidavit, Detective Edmonds stated:

That on Tuesday, October 9, 1984, your affiant was contacted by Special Agent Vera Thompson of the United States Drug Enforcement Administration, who indicated to your affiant that a Confidential reliable Informant had contacted her and related the following. That within the past 48 hours the Confidential Informant had been at the above–described residence where, while at that residence, observed 60 to 80 growing 4 ft tall marijuana plants in the basement of that residence. That this Confidential Informant also related that these plants were being grown under large bulbs with shields around them. That this Informant also noticed numerous buckets and misc. electrical equipment throughout the basement. This Informant also indicated that the walls were covered with a reflective type material very similar to

---

[1]These cases were not consolidated on appeal. Because they present identical issues arising from the same facts, we exercise our authority to consolidate these cases for opinion pursuant to RAP 3.3(b). The above referenced cause numbers are hereby consolidated under 17298–1–I.

aluminum foil. This Informant also indicated that the windows around the entire basement had been covered with some type of material to prevent anyone from seeing into the basement area. That this Informant also provided information that a Brett Sheldon and a Shawn Patrick Freeman reside at that residence. That Special Agent Thompson conducted a utilities and telephone record check for that residence and found that a Brett Sheldon has the utilities in his name and that Shawn Patrick Freeman has a telephone billing in his name. That this C/I is familiar with marijuana in the growing and processing states through prior use and association with users and growers. *That this Informant has been associated with the U.S. DEA for two months and is classed as a Confidential and reliable Informant. That this Informant has introduced the U.S. DEA to a subject where that individual was subsequently arrested and charged with the delivery of a controlled substance and also a quantity of controlled substances were seized.* That Special Agent Thompson indicated to your affiant that the information provided by the C/I regarding Brett Sheldon and Shawn Patrick Freeman has shown to be correct. That your affiant is aware that marijuana growers use halide lights with shades to grow marijuana indoors. That these lights produce a high intensity light, forcing the growers to cover the windows to prevent detection. That your affiant is also aware that many indoor marijuana growers will use an aluminum type foil to cover the walls so that the light will reflect onto the plants to assist in growing. That your affiant has been a police officer for eight years and during that time has conducted over 500 controlled substance investigations. That at least 100 of these investigations involved marijuana grow farms. That the Informant also stated that the subjects at the above residence store their processed marijuana inside the detached garage as well as under the front seat of a sports car inside that garage.

(Italics ours.)

King County police officers executed the warrant, seized the marijuana, and arrested Freeman and Sheldon. Both were charged with possession of more than 40 grams of marijuana in violation of RCW 69.50.401(d).

Freeman and Sheldon moved to suppress the evidence

seized pursuant to the search warrant on the basis that the affidavit did not sufficiently establish the reliability of the informant. The court denied their motion to suppress and they appeal.[2]

STANDARD OF REVIEW

■ This court reviews the validity of a search warrant for abuse of discretion, *State v. Smith,* 93 Wn.2d 329, 352, 610 P.2d 869, *cert. denied,* 449 U.S. 873 (1980), giving great deference to the magistrate's determination of probable cause, *State v. Seagull,* 95 Wn.2d 898, 907, 632 P.2d 44 (1981). In interpreting a search warrant affidavit, reviewing courts are to determine whether an ordinary person reading the affidavit would understand that a criminal violation existed and was continuing at the time of the search warrant application. *State v. Fisher,* 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982). Courts should evaluate the affidavit in a commonsensical, rather than hypertechnical, manner. *Fisher,* 96 Wn.2d at 965. Doubts should be resolved in favor of the warrant's validity. *Fisher,* 96 Wn.2d at 964.

ANALYSIS

Freeman and Sheldon concede that the search warrant affidavit sets forth facts sufficient to establish probable cause that criminal activity had occurred or was occurring. The only issue raised on appeal is whether the affidavit provided the magistrate with sufficient information to judge the informant's reliability and veracity.

Freeman and Sheldon contend that the affidavit failed to describe a "track record" for the informant demonstrating his reliability and veracity. The only portion of the affidavit that relates to the informant's reliability is the statement that the informant introduced an individual to a DEA agent, and that this individual was later arrested and charged with delivery of a controlled substance. They argue

---

[2]Freeman and Sheldon waived their right to a jury trial and submitted their cases on stipulated facts. The court found both guilty as charged.

that the affidavit does not tell the issuing magistrate that there is any relationship between these two events.

Washington courts apply the *Aguilar–Spinelli* test to determine whether probable cause existed to issue a search warrant. *See State v. Jackson,* 102 Wn.2d 432, 440, 688 P.2d 136 (1984) (rejecting the United States Supreme Court's "totality of circumstances" test established in *Illinois v. Gates,* 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983)). Under the 2–pronged *Aguilar–Spinelli* test, the informant's tip creates probable cause for a search warrant if: (1) the affidavit presents some factual basis for the informant's conclusion that criminal activity was taking place; (2) the affidavit presents some factual basis for the officer's conclusion that the informant was credible or his information reliable. *Jackson,* 102 Wn.2d at 435 (citing *Spinelli v. United States,* 393 U.S. 410, 413, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969) and *Aguilar v. Texas,* 378 U.S. 108, 114, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964)). The first prong of the *Aguilar–Spinelli* test focuses on the basis of the informant's knowledge, *Jackson,* 102 Wn.2d at 437, while the second focuses on the informant's veracity or reliability, *Fisher,* 96 Wn.2d at 965. While each prong is "analytically severable," a search warrant affidavit must satisfy both prongs of the test to pass constitutional muster. *Jackson,* 102 Wn.2d at 437.

■ At issue in the case sub judice is whether the search warrant affidavit satisfied the "veracity prong" of the *Aguilar–Spinelli* test. To establish an informant's veracity, the affidavit must present facts sufficient to enable the magistrate to "determine either the inherent credibility or reliability of the informant on the particular occasion." *Fisher,* 96 Wn.2d at 965. A statement that the informant is credible is not sufficient. *Fisher,* 96 Wn.2d at 965. Neither is a mere assertion that the tip came from an informant "who has proven to be reliable in the past". *State v. Woodall,* 100 Wn.2d 74, 76, 666 P.2d 364 (1983) (quoting the search warrant affidavit). Unless the tip is independently corroborated, some factual description of the informant's "track

record" as an informant is necessary to establish the informant's reliability. *Jackson,* 102 Wn.2d at 437. For example, in *State v. Wolken,* 103 Wn.2d 823, 827, 700 P.2d 319 (1985), the court upheld an affidavit which stated that the informant had previously provided an Oregon police officer with information that led to one arrest and the seizure of marijuana. The court held that this statement sufficiently satisfied the veracity prong of the *Aguilar–Spinelli* test. *Wolken,* 103 Wn.2d at 827.

The affidavit here described an informant's introduction to the DEA of an individual "*where* that individual was subsequently arrested and charged with the delivery of a controlled substance". (Italics ours.) Freeman and Sheldon contend that the use of the word "where" does not sufficiently describe a "nexus" between the informant's introduction and the subsequent arrest and conviction. Their argument focuses on the absence of the word "led" which, they claim, distinguishes their case from *Wolken.* We reject this hypertechnical reading of the affidavit and employ a commonsensical reading of the word "where." In context, there is little doubt that "where" means "where, *as a consequence.*" We hold that the affidavit sufficiently established the informant's track record, satisfying the veracity prong of the *Aguilar–Spinelli* test.[3]

Affirmed.

WILLIAMS, J., concurs.

RINGOLD, A.C.J. (dissenting)—I respectfully dissent from the majority's conclusion that the affidavit for the search warrant satisfied the veracity prong of the *Aguilar–Spi-*

---

[3]Because we hold that the search warrant affidavit presented sufficient information to demonstrate the informant's reliability, we need not address appellants' additional contention that independent police investigation did not verify the informant's tip because it corroborated only "innocuous details." Similarly, we need not decide whether the State correctly contends that an informant's veracity is established by the fact that his statement was against his penal interest.

*nelli*[4] test.

This case provides a good example of the necessity for carefully drafting affidavits in support of warrants. Under *Aguilar–Spinelli*, the affidavit must set forth sufficient facts and circumstances so that the magistrate can determine whether the informant is credible or that his information is reliable. *State v. Jackson,* 102 Wn.2d 432, 443, 688 P.2d 136 (1984); *State v. Woodall,* 100 Wn.2d 74, 76, 666 P.2d 364 (1983); *State v. Fisher,* 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied,* 457 U.S. 1137, 73 L. Ed. 2d 1355, 102 S. Ct. 2967 (1982). Mere conclusory statements are insufficient. *Woodall,* at 78; *Fisher,* at 965.

The affidavit first asserts that Special Agent Thompson indicated that the informant who contacted her was confidential and reliable. Standing alone, this statement is merely a bald conclusion of reliability that was determined to be insufficient in *State v. Woodall, supra* at 75.

Later, the affidavit indicates that the informant had been associated with the Drug Enforcement Agency (DEA) for 2 months and was "classed as a Confidential and reliable Informant." While it is true, as the State suggests, that this provides an indication that the informant's reliability has been independently determined by one other than the affiant, it is still nothing more than a bald conclusion. The basis for the DEA's assessment of the informant's reliability is not given so it cannot be evaluated independently by the magistrate.

Given these deficiencies, the linchpin in the State's argument is that the informant's reliability is evident from the fact that the informant introduced the United States DEA to an individual who "was subsequently arrested and charged with the delivery of a controlled substance and also a quantity of controlled substances were seized." The fault of this argument is illustrated in the State's own brief where it is stated that the arrest and seizure was "appar-

---

[4]*Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

ently" a result of the informant's information. The fact that the informant introduced the DEA to the individual does not indicate that the information provided by the informant was at all instrumental in either the arrest or the seizure.

Contrast *State v. Wolken,* 103 Wn.2d 823, 700 P.2d 319 (1985), relied on by the majority.[5] In that case the informant had been associated with the Oregon authorities for 3 months "and had provided information *which led* to one arrest and seizure of marijuana." (Italics mine.) *Wolken,* at 825. The Supreme Court held that this was sufficient evidence of the informant's track record and satisfied the veracity prong. *Wolken,* at 827. Unlike the present case, the affidavit in *Wolken* supplied the necessary facts for the magistrate to conclude that the informant's information had been instrumental in a previous arrest and seizure of marijuana.

In the affidavit under review in this case, no direct correlation is made between any information supplied to the DEA by the informant and the subsequent arrest and seizure by the DEA. There are insufficient facts to establish the informant's track record and the magistrate was left to speculate as to the informant's veracity. Justice Utter's dissent in *State v. Fisher,* 96 Wn.2d 962, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982) and Judge McInturff's dissent in *State v. Paradiso,* 43 Wn. App. 1, 7–10, 714 P.2d 1193 (1986) are particularly instructive.

When the authorities are dealing with informants who meet the *Aguilar–Spinelli* test, it is not chance that the affidavits are not convoluted, are in simple English, and logically establish the essential factors. Such is not the case here, and I would reverse.

Review denied by Supreme Court September 1, 1987.

---

[5]The basic issue in *Wolken* concerned the defendant's right to discovery of the identity of the informant and the right to a *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978) hearing.